## JOHN LEAR v. SAMUEL FRIEDLANDER et al.

1. PROMISSORY NOTE AS SATISFACTION OF PRECEDENT DEBT. — While it is a general rule that the giving of a promissory note does not discharge the precedent debt of equal grade, unless accepted as such, there are cases where the court will intend that the note was given in satisfaction of the original debt.

2. SAME — UNDER SOME CIRCUMSTANCES TREATED AS PAYMENT — INSTANCE GIVEN. — If at the time the substituted note was made the maker was solvent, and so continued to be long enough for the creditor to have realized his debt by suit and if, in the mean time, rights have sprung up in favor of other parties, which would be injuriously affected or wholly lost if the original indebtedness were treated as subsisting and unextinguished, so that a loss must ensue to somebody, it should be made to fall upon the negligent and indulgent.

3. SAME — SAME — CASE AT HAND. — The holder of a promissory note surrendered it to the executrix of the maker, who was also sole devisee and legatee of the maker, to enable her to settle the estate with the probate court, which she did in 1861, filing the note of her testator, thus lifted by her own, as a voucher to her final account, and in 1866 she mortgaged the land she had received by devise, and subsequently mortgaged the same land to secure the note she had given for the note of her testator. In a contest between the first mortgagees and the holder of the note given by the executrix for the note of her testator: _Held,_ that the rights of the holder of said note must yield to those of the creditors, who have trusted to her ownership of the land, unincumbered, as appeared from the records, and taken a lien upon it.

APPEAL from chancery court of Yazoo county.   SHACKLE-FORD, J.

The opinion of the court contains a sufficient statement of the facts of this case, with the single exception that it appears but inferentially from the opinion that the mortgage to complainants below was senior to that to appellant, while the record shows this fact distinctly.

*D. & S. W. Jones*, for appellant.

The court below erred in sustaining complainant's demurrer to Lear's cross-bill, which shows that Lear's debt was due from, and owing by, Thomas Jones in his life-time, from whom Mrs. Shaw acquired the lands in controversy by devise. It also shows that Mrs. Shaw was sole executrix of Thomas Jones' will, and procured and obtained from Lear the note of Thomas Jones, without paying it, to enable her to make a final settlement of her testator's estate, which she did at the May term of the Yazoo probate court, 1861.

Cross-bill further states, that the individual note of Mrs. Shaw was not taken by him as payment and satisfaction of Thomas Jones' note; nor was it agreed or understood by them that it should be so considered. All which was admitted by the demurrer.

The court below sustained the demurrer upon the ground that Lear's remedy, if he had any, was in the probate court, by having an administrator *de bonis non* appointed upon the estate of Thomas Jones, who should take proper steps to sell the lands, as the personal property which belonged to the estate had all been lost or destroyed during the late war. But this position was erroneous, for, there being no administration, a court of equity had full and complete jurisdiction of the subject, and was the only tribunal that could afford full, adequate and complete relief. Cable v. Martin & Bell, 1 How. (Miss.) 562, 563; McRea v. Walker, 4 ib. 457, 458; Grant v. Lloyd et al., 12 Smedes & Marsh. 217; Archer et al. v. Jones et ux., 26 Miss. 589; Rabb v. Griffin, ib. 583; Wood et ux. v. Ford, 29 ib. 57–65; Manly et al. v. Kidd, 33 ib. 141–148.

The taking up the note of Thomas Jones by the executrix, and substituting her own for it, was no payment or extinguishment of the debt. Taylor & Myers v. Conner, 41 Miss. 722.

The court below erred in overruling the motion of Lear to file an amended cross-bill. Amendments shall be allowed in pleadings and proceedings, on liberal terms, to prevent

delay and injustice. Rev. Code, 547, art. 49. A bill may
be amended at any time before the pleadings are terminated.
1 Hoff. Ch. Pr. 284, *et seq.;* 1 Barb. Ch. Pr. 113; Story's
Eq. Pl., §§ 332, 614, 884, 887, 890. Application was made
to file amended bill before the·cross-bill was put in issue.
That the refusal of the chancellor to allow amendment to a
bill may be assigned as error, *vide* Bacon v. Parker, 31
Miss. 49.

*Wilkinson & Bowman,* on the same side.

The court below erred in sustaining the demurrer to plain-
tiff in error's cross-bill. · It is distinctly alleged that the debt
due plaintiff in error was for money loaned to Thomas Jones,
deceased, to purchase part of the lands mentioned in com-
plainant's bill ; that Thomas Jones died, leaving a will, be-
queathing all of his property to his executrix, E. D. Shaw,
after the payment of his debts. Subsequent to the death
of her testator, Mrs. Jones contracted the debts on her own
account, due to defendants in error. It is true that Mrs.
Shaw, the executrix, gave her individual note for the in-
debtedness due by the estate of Thomas Jones, deceased ;
but it is expressly alleged that it was not intended to be
taken in payment thereof, nor that the estate of Thomas
Jones, deceased, should be released.

An executor having given his own note for a debt due by
the estate does not exempt the estate from liability, and
may be sued in equity for it. Douglass v. Fraser, McCord's
Ch. 400 ; Carter v. Eveleigh, 4 Des. 19 ; Peter v. Beverly,
10 Pet. 506 ; Woods v. Ridley, 27 Miss. 150.

A promissory note, given for an antecedent debt, will
not be an extinguishment thereof, unless it clearly appears
that it was taken in absolute payment. Benjamin on
Sales, 539, 540; Peters v. Beverly, 10 Pet. 567 ; Holmes v.
De Camp. 1 Johns. 34 ; Angell v. Felton, 8 ib. 149 ; Ben·
dick v. Green, 15 ib. 249 ; James v. Hackley, 16 ib. 277 ;
Story on Prom. Notes, § 104, p. 115 ; Bayley on Bills, ch.
9, p.363 to 369 ; Taylor et al. v. Conner, 41 Miss. 722.

It is alleged that Mrs. E. D. Shaw made her final settlement, as executrix of the estate of Thomas Jones, in May, 1861.    Where there is no executor or administrator, courts of equity, in cases where they had jurisdiction before our constitution was organized, will take cognizance to subject assets of decedent.    Favre's Heirs v. Graves, 4 Smedes & Marsh. 711 ; Rabb v. Griffin, 26 Miss. 580 ; Archer v. Jones, ib. 589 ; Wood v. Ford, 29 ib. 63, 64, 65.    Before our constitution was organized, courts of equity had jurisdiction over matters of administration.    Story's Eq. Jur., §§ 531, 532, *et seq.;* Mit. Plead. (by Jeremy) 125, 126, and 136.

A creditor may file his bill against an estate for payment of his own debt.    If the bill is sustained and an account is decreed to be taken, the court of chancery will make a decree in favor of the creditor without sending him back to law for the recovery of his debt.    1 Story's Eq. Jur., § 546, p. 521 ; Thompson v. Brown, 4 Johns. 630-634.    It is the foundation of equity jurisdiction that a court of chancery will grant such relief as the parties would have been entitled to, if they could have enforced their claim in proceedings at law.    Bacon v. Cohen, 12 Smedes & Marsh. 519 ; Marsh v. Mandeville, 28 Miss. 127.

The last will and testament of Thomas Jones, deceased, from which Mrs. E. D. Shaw derives her title to the lands sought to be subjected to the payment of defendant in error's debt ; appoints her as sole executrix to pay all his just debts.    After the payment of all his just debts the testator bequeaths all his estate, real and personal, to her.

Where a testator by will, in terms express or implied, charges his estate, or directs his debts to be paid, it will be a lien which chancery will enforce.    2 Story's Eq. Jur., §§ 1244, 1246, *et seq.*

Mrs. E. D. Shaw, the devisee under and executrix of the will of Thomas Jones, deceased, derived her title to the lands mortgaged from the will alone.    She has incumbered them for debts created and due by herself after the death of

her testator. The debt of plaintiff in error was due and owing by the testator in his life-time.

Creditors may go directly upon the legatees or distributees who have been paid before the payment of debts. The executor may be primarily liable, but all others to whom the assets have come are trustees for the creditors until their debts are paid. 2 Story's Eq. Jur., § 1251.

Even if we should be mistaken in the foregoing opinion, yet the court erred in rendering a decree of foreclosure in favor of plaintiff in error after the dismissal of the cross-bill.

*A. M. Harlow,* for appellees.

We think it will be seen, upon an examination of the whole record, that this case must be determined alone by the date of the record of the deeds of mortgage. Mrs. E. D. Shaw is the sister and legatee of Thomas Jones, deceased, who died many years ago, and she inherited the land in question from him. Her title to it was clear and unquestionable, as will appear by reference to the record. She was long in the undisturbed possession of it, as owner thereof, and at the time of the execution of said mortgages, she was the executrix of the will of said Thomas Jones, and qualified as such, having letters testamentary granted to her by the probate court of Yazoo county, as far back as the 27th day of January, 1859; she administered the estate fully; and, at the May term, 1861, of the probate court of Yazoo county, made her final settlement of her testator's estate and was discharged as executrix. The administration of Thomas Jones' estate being thus closed, his debts all paid or arranged, her title to the land in controversy became perfect, and she could then undoubtedly sell, mortgage or dispose of it as she saw proper. Who could gainsay it? Not his creditors, for he had none, as we think the record abundantly shows. There was no one else to dispute her right or title, for she was sole heir and legatee of Thomas Jones. She did mortgage it, first to the complainants and afterward to Lear. The complainants were

first in time, and therefore first in right. Mrs. E. D. Shaw recognized and treated defendant Lear as a junior mortgagee or a subsequent incumbrancer, as is shown by her plea to the bill of complainants. The name of Thomas Jones is not mentioned. Lear took the mortgage upon the land as the individual property of E. D. Shaw; and, in accepting that mortgage, he took it incumbered by the prior mortgage to complainants.

But it is insisted by Lear, that prior to making the final settlement of Mrs. Shaw, as executrix of the will of Thomas Jones, he, Lear, held a note against said Thomas Jones, made in his life-time, and, to enable Mrs. Shaw to make her final settlement, he gave up to her said note, and took the individual note of Mrs. Shaw in lieu of the note made by, and held against, Thomas Jones; that she used it as a voucher in her final account, and that her note was not a satisfaction of the original note against Thomas Jones. Thus, from his own showing, it appears from the records of Yazoo county, that the note of Thomas Jones has been long since paid. So far as the public knew there was no debt against the estate of Thomas Jones, and especially did it appear that his note in favor of Lear was paid. It hence follows that the title of Mrs. Shaw to the land in question, as an heir or legatee of her brother, was clear, certainly clear as against the note of Lear against Jones. This incumbrance being removed, it is to be presumed that the complainant gave her credit on the faith of this land. Would it not now be a gross fraud upon their rights to allow Lear to come in and set up his secret claim or lien against the estate of Thomas Jones, and thus defeat their mortgage?

Can it be, for one moment, successfully contended that the note given by Mrs. Shaw to Lear was or is now a satisfaction and extinguishment of the note made by Thomas Jones? That it is, there is not in our mind a shadow of a doubt. Look at the dates; look at the whole transaction; the dealings of the parties, and all doubts upon this subject must vanish. The note made by Thomas Jones is dated the

17th day of February, 1858; long years ago. It would be barred, and almost doubly barred by the statute of limitations. Mrs. Shaw gives her note as far back as the 28th day of January, 1861, to take up the note which was probated against the estate of Thomas Jones. For what purpose was the note taken up? Was this done to keep said note alive against the estate of Thomas Jones? No; on the contrary, for the avowed purpose of making her final settlement, discharging the estate from the note, and taking the burden upon herself. But this is not all. On the 24th day of April, 1866, more than five years after the date of Mrs. Shaw's note, Lear takes a mortgage from her on said land, to secure her note, not the note against Thomas Jones. He takes said mortgage on said land, as her property, and not as the property of Thomas Jones. There is not an allusion in any of the papers to the note against Thomas Jones, or to the liability of his estate to the payment of Mrs. Shaw's note. She alone is looked to, security is taken upon her land, as her property, to pay her note or her debt. To seek now to bring in the Jones note, to resurrect it from the dead, to charge the estate of Thomas Jones with it, is an after-thought. It will not do. Lear's whole conduct shows that he himself regarded the note of Thomas Jones as paid and satisfied, and that Mrs. E. D. Shaw individually was his debtor.

Under the circumstances of this case, it must be concluded that the note of Mrs. Shaw was given by her and received by Lear in satisfaction of the note made by Thomas Jones. It is certainly *prima facie* evidence of satisfaction, and nothing which appears upon the record rebuts that presumption. Lapiece et al. v. Hughes, 24 Miss. 69, 72, 76, 77; Pettibone et al. v. James, 25 ib. 500, 501; Story on Promissory Notes, § 404. Whatever doubts there might be, if any existed, as to the liability of Thomas Jones' estate to Lear, if the controversy were alone between that estate and Lear, certainly there can no doubt exist where the rights of third parties, as in this case, intervene. As to third parties, the

note of Mrs. Shaw must be deemed and held as an extinguishment and satisfaction of the note against Thomas Jones.

Again, Lear seeks to revive the debt against the estate of Thomas Jones when he has no administrator or legal representative before the court; and, without an administrator, we insist that no such effort can be made.

SIMRALL, J. :

Friedlander & Gersen and T. H. & J. M. Allen & Co., exhibited their bill in chancery to foreclose a mortgage in fee executed to them by Elizabeth D. Shaw. By amended bill John Lear was made a party defendant, on a suggestion that he had some sort of claim, a lien on the mortgaged premises.

Lear, by answer and cross-bill, sets up that Thomas Jones (from whom Elizabeth D. Shaw derived the lands as devisee) was indebted to him in the sum of $1,331 by promissory note, dated 17th February, 1858, and due twelve months after date. That at his decease Jones was possessed of a large personal estate, which he bequeathed to Elizabeth D. Shaw, and made her his executrix. That, in order that she might make a final settlement in 1861, he accepted from her her individual note for the debt due him by her testator, and that she did, in her final settlement made in the probate court, obtain credit for the note due from her testator. But her note was not taken by him in satisfaction of his debt against the testator's estate. That subsequently, on June 24, 1866, said Elizabeth, as additional security for his debt, executed to him a mortgage on the same lands embraced in the mortgage to the complainants.

On this state of facts he claims a priority over the complainants, treating his debt as still subsisting against Jones' estate, and the lands in controversy as part of it. The general rule is, that the giving of a promissory note does not discharge the precedent debt of equal grade, unless accepted as such. In Woods v. Gridley, 26 Miss., the doctrine is ex-

tended to promissory notes given by an executor or administrator in payment of the debt of the testator or intestate. And this, although the executor may have settled and given himself credit in his account for the debt. The creditor might, at his election, hold the executor personally or proceed by bill against the estate. If the executor or administrator is pursued, upon his individual promise, it will be presumed that the promise was made in consideration of assets. It is an admission of assets *prima facie.*

But there are cases where the court will intend that the note was given in satisfaction of the original debt. Peter v. Beverly, 10 Pet. 552. If at the time the substituted note was made the promisor was solvent, and so continued to be for some time thereafter, long enough for the creditors to have realized his debt by suit; and if, in the mean time, rights have sprung up in favor of other parties, which would be injuriously affected or wholly lost (if the original indebtedness were treated as subsisting and unsatisfied), so that a loss must ensue to somebody, it should be made to fall upon the negligent and indulgent. In Arnold v. Camp, 12 Johns. 409, the plaintiff held the promissory note of Camp and Downing partners. The plaintiff, the creditor, gave up the note of the partners, and took in lieu of it, the note of Downing, one of them. Camp had given Downing property to take up the partnership note. Downing's note was held to be in satisfaction, otherwise injury and loss might ensue to Camp. James v. Hackly, 16 Johns. 278, illustrates the same principle. Hackly, one of the administrators, produced to his co-administrators evidence that the creditor of their intestate had received his note in full of all demands on the estate. Knowing that Hackly was solvent and able to pay his note, the creditor, by the indulgence of Hackly, for a long time, "must (say the court) either submit to a loss attributable entirely to his negligence, or throw the loss on the estate," for the co-administrators and were justified in re-imbursing Hackly.

Hackly continued solvent for three years after he gave the note.    See, also, Cherer v. Smith, 15 Johns. 276.

We think, in view of all the circumstances, that it ought to be intended that the note of Elizabeth Shaw was in satisfaction of the debt of her intestate ; or it may be stated thus : Lear ought not to be permitted, at this late day, as against the complainants who have acquired a lien on the lands devised, to set up his debt against Jones, the intestate, and thereby defeat their debt.    In his answer and cross-bill, Lear states that Jones left a large personal estate, in addition to the lands, and that there was but little indebtedness ; and that he received the note of Elizabeth (who took the whole estate, real and personal), under the will, as a matter of convenience, to enable her to settle finally, without delay and costs.    At that time (1861), the debt against her was just as good and solvent as it was against Jones, the intestate, for she succeeded to the whole estate. But, by co-operating with her, and consenting that she might treat the original debt, in her final settlement, as paid, and enabling her to hold the property by her title as legatee and devisee, he assisted in giving her personal credit, on the faith of the property thus acquired.

By his negligence in not insisting upon his debt, from 1861 to 1866, third parties, having access to the probate records, and there finding his debt against the intestate paid, had a right, both from his delay and the record, to suppose that his original demand was satisfied, and might safely extend credit to the devisee, and take liens upon the land.    In these circumstances, business men who conduct their affairs with prudence and caution would not hesitate to extend credit to her, and would consider· any lien she might make as safe.    If, in the mean time, Elizabeth Shaw has become insolvent, so that a loss must fall either upon the complainants or upon Lear, equity would not pause long to determine who should bear it.    Lear has actively contributed to the condition of things which presented Elizabeth Shaw to the public as the owner of this property ;

disembarrassed of his original claim, he laid by, and without let or challenge permitted her to enjoy it as ostensible owner, and, not until she had incumbered it to the complainants, five years after he had surrendered his original debt, and accepted her promise in its stead, does he pretend to assert that he has an equity in the property.

The policy of the law is, that there shall be as speedy a payment of the debts of a decedent as can be reasonably made ; this is the primary duty of the administrator, and ought to be performed before final settlement and discharge ; indeed, the trust is not fully executed until this has been done.    43 Miss. 104.    But there is another circumstance, in connection with those we have been considering, which makes it conclusive that Lear had surrendered all claim on the estate.    On the 24th of June, 1866, he took, from Elizabeth Shaw, a mortgage to secure her note.

If the only contestants to this record were Lear, the creditor, and Elizabeth Shaw, the debtor, and his debt could only be realized by a resort to the estate of Jones, and no third parties had conflicting claims and interests, there might be relief afforded him.    Or, without disturbing intervening rights, he might, as stated in Woods v. Gridley, *supra*, have his election of a personal suit or a bill against the estate.

Upon the whole, we are satisfied that the decree of the chancellor is correct.

*Decree affirmed.*