# WHEELING.

## MERCHANTS NATIONAL BANK *v.* GOOD, ADM'R., *et als.*

Submitted June 8, 1882—Decided April 14, 1883.

(WOODS, JUDGE, Absent.)

1. A judgment againt the personal representative of an estate is not even *prima facie* much less conclusive evidence against the devisee or heir of such estate; and the fact that the same person may be both personal representative and heir or devisee does not constitute an exception to the rule. (p. 461.)

2. In a suit to subject real estate, conveyed by a debtor in his lifetime without valuable consideration, to the payment of a simple contract debt, it is error for the court to take the amount of a judgment for such debt recovered against the administrator of such debtor as the foundation for its decree and to give interest on the amount of such judgment—said amount being for the principal and interest on the original debt at the date of said judgment. The decree in such case should be for the original debt with the interest aggregated thereon to the date of the decree, and then interest on such aggregate until paid. (p. 461.)

3. The giving of a new note for an old one which had become due—the amount and makers of the two notes being the same—will not be treated as a payment or extinguishment of the old note or the pre-existing debt, unless the parties so *expressly agree*; but it will be regarded merely as an extension of credit. (p. 463.)

4. In such case the surrender of the old note will not of itself raise a presumption of such agreement to extinguish the old note by the giving of the new one, it being considered as a conditional surrender and that its obligation is restored and revived, if the new note is not paid. (p. 464.)

5. And the new note will not be regarded as a payment of the old, even when it is so expressly agreed, if such agreement was procured by the concealment of any material fact affecting the security of the debt. (p. 465.)

6. Nor will the presumption apply where the creditor, when he takes the new note, abandons some security which he holds. (p. 466.)

*Cause submitted before Judge W. took his seat on the bench.

7. Where one of two or more makers of a joint and several promissory note is surety, he is liable to the payee as principal; and, except in special cases provided by statute, the holder of such note has the same legal rights against such surety as he has against the principal maker. (467.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ohio, rendered on the 23d day of May, 1881, in a cause in said court then pending, wherein the Merchants National Bank of West Virginia was plaintiff, and J. Hanson Good, administrator, and others were defendants, allowed upon the petition of said Good.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the judgment appealed from.

SNYDER, JUDGE, furnishes the following statement of the case:

On the 14th day of October, 1872, and for many years prior thereto, Benoni S. Good was the owner in fee of valuble real estate in the county of Ohio, which he by deed dated on that day and recorded in said county on the day following conveyed to Robert B. Woods, trustee, without any valuable consideration, for the use of his wife Jane T. Good for life with remainder in fee to his son, J. Hanson Good; that on the said 14th day of October, 1872, and for several years before that time, Moses C. Good, Benoni S. Good and A. Bedillion were indebted to the Merchants National Bank of West Virginia, Wheeling, upon a joint and several note executed by them to said bank for one thousand four hundred dollars. The consideration for said debt was money borrowed by said Moses C. Good upon the note of himeslf with the said Benoni S. Good and A. Bedillion as his sureties thereon; that notes for said debt had been renewed every ninety days for the same sum and by the same parties from the date of the loan, the interest for the current ninety days having been paid at each renewal, until November 25, 1872, when it was finally renewed by giving the following note and paying the interest thereon till its maturity:

"$1,400.     Ninety days after date, we, or either of us, promise to pay to the Merchants National Bank of West

Virginia (at Wheeling) fourteen hundred dollars, for value received. Witness our hands this 25th day of November, 1872.          "(Signed)

"M. C. GOOD,
"B. S. GOOD,
"A. BEDILLION."

At each renewal the matured note was surrendered to said M. C. Good by the bank; that, on the 6th day of January, 1873, the said Benoni S. Good departed this life, and on the 12th day of April, 1873, his son, the said J. Hanson Good, duly qualified as his administrator; that no part of the said one thousand four hundred dollars having been paid, the said bank by an action on said note of November 25, 1872, recovered a judgment against said J. Hanson Good ·as administrator of said Benoni S. Good, deceased, in the municipal court of Wheeling, on May 29, 1874, for one thousand five hundred and eighty-nine dollars; and the said judgment remaining unpaid, the said bank on the 31st day of August, 1874, instituted this suit in the circuit court of Ohio county against said J. Hanson Good in his own right and as administrator of said Benoni S. Good, deceased, Jane T. Good and Robert B. Woods, trustee. The plaintiff, in its bill, avers the facts hereinbefore stated, and, also, that said deed of October 14, 1872, was made with intent to delay, hinder and defraud the plaintiff as a creditor of said Benoni S. Good, and, being without valuable consideration, is void as to the plaintiff's debt which had been contracted before the execution thereof; that the said real estate is of the value of twenty thousand dollars, and it was mainly on account of the ownership of said real estate that the notes for the debt aforesaid were renewed from time to time and credit given to said Benoni S. Good; and prays, that the said deed, as to the said debt of the plaintiff, be declared void and so much of the real estate therein conveyed as shall be necessary may be sold to pay said debt with interests and costs, and for general relief.

The defendant J. H. Good demurred to the plaintiff's bill, which demurrer was overruled by the court, and, subsequently, he in his own right and as administrator of said B. S. Good, deceased, and the defendant, Robert B. Woods trustee, filed their separate answers to said bill, and the

plaintiff replied generally thereto.  The said J. H. Good in his answer avers, that said B. S. Good died without any estate; that he is his administrator, and no assets have ever come into his hands.  He admits the recovery of the plaintiff's judgment, but denies that said B. S. Good was indebted to the plaintiff on account of the note upon which said judgment was recovered prior to November 25, 1872, the date of said note, and he avers that all the series of notes mentioned . in plaintiff's bill of date prior to the 25th of November, 1872, had been paid and surrendered by the plaintiff.  He denies that said conveyance of October 14, 1872, was made with intent to delay, hinder and defraud the plaintiff or that the debt of plaintiff had been contracted at or before the date of said conveyance; and he, also, denies that it was the ownership of the real estate conveyed by said B. S. Good on which plaintiff mainly relied for the security of its said debt.  The answer of the said Robert B. Woods trustee, denies that he had any knowledge of any indebtedness by the said B. S. Good to plaintiff at the date of said conveyance to him; and he denies that the real estate thereby conveyed can be made liable for said debt, or that said conveyance was made with intent to delay, hinder and defraud the plaintiff or any one else.

The record shows that the respective parties admitted the following facts in the cause :

1.  That Benoni S. Good was surety for M. C. Good on the note of November 25, 1872, and also on all other notes of which this was a renewal ;

2.  That when said note of November 25, 1872, was delivered to the plaintiff in renewal of a note then due, the note then due was surrendered to M. C. Good, and also that at each renewal the old note was surrendered to M. C. Good ;

3.  That no personal notice was given by Benoni S. Good, nor any of the defendants to the plaintiff of the execution of the deed to R. B. Woods trustee ;

4.  That the consideration for said deed was the natural love and affection of Benoni S. Good for his wife and son ; and

5.  That at the time of the institution of this suit Moses C. Good, and A. Bedillion, who with said Benoni S. Good, were

joint and several makers of the notes and renewals in these proceedings named, had departed this life, having died totally insolvent; and that this suit may proceed without making their respective personal representatives parties to the same and be decided as though said personal representatives had been made and were parties duly served with process in these proceedings.

These admitted facts and the foregoing statement contain all the material facts presented by the record in this cause.

The defendant Jane T. Good having departed this life, the suit abated as to her, and on May 23, 1881, the said circuit court of Ohio county entered a decree, finding that the defendant, J. Hanson Good, administrator of Benoni S. Good, deceased, is indebted to the plaintiff in the sum of one thousand five hundred and eighty-nine dollars, with interest thereon from May 29, 1874, until paid; that said indebtedness was contracted by said B. S. Good prior to the date of said conveyance of October 14, 1872, to Robert B. Woods trustee; that said conveyance was voluntary and is void as to the debt of plaintiff; and the court, therefore, decreed that, unless said debt, interest and costs of this suit were paid in thirty days, a commissioner, therein named, should sell enough of said real estate so conveyed to pay the plaintiff's debt, &c. From this decree the defendant J. Hanson Good obtained from this Court an appeal and *supersedeas.*

*Robert White* for appellant, J. H. Good, cited the following authorities: Code Va. (1849) ch. 58 § 16; Rev. Stat. U. S. § 5196; Code, ch. 74 § 2; 5 Cush. 158; 13 Vt. 452; 6 Mass. 143; 15 Serg. & R. 162; 12 Mich. 425; 21 Wend. 450; 8 Pick. 522; 4 Wash. C. C. 271; 5 Whart. 530; Story Prom. Notes (5th ed.) § 105; 4 Mass. 336; 2 Vt. 287; 4 Vt. 549; 4 Pick. 444; 2 Metc. (Mass.) 157; 12 W. Va. 772; *Id.* 784; 1 Cliff. 63; 2 Cliff. 130; 3 Serg. & R. 276; 4 Watts & S. 100; 19 Pa. 318; 34 Mo. 485; 26 Coms. 481; 2 Gratt. 374; 12 W. Va. 837; 11 Johns. 409; 23 Vt. 561; 8 Vt. 151; 2 McL. 594; 6 Cranch. 253; 26 Conn. 481; 21 Conn. 200; 27 *Id.* 47; 5 Strob. 126; 34 Mo. 485; 4 Wall. C. C. 271; 2 B. & A. 210; 32 Gratt. 1; 17 W. Va. 574, 575; 6 Humph. 85; 10 Yerg. 410; 3 J. J. Marsh. 195; 1 La. 527; 5 Dal. 329; 2 Pars. 203;

10 Wheat. 340; 10 Serg. & R. 75; 11 R. I. 619; 23 Vt. 561; 8 Cow. 77; 8 T. R. 515; 2 Comp. & J. 405; 3 M. & S. 362; 45 Barb. 476; 4 J. J. Marsh. 1; 2 Gill. & J. 493; 10 Md. 27; 20 Md. 248; 1 Ired. 262; 47 Barb. 29; 2 Gill. 707; 27 Ala. 254; 5 Whart. 530; 4 Watts & S. 100; 19 Pa. 318; 34 Mo. 485; 4 Man. G. & S. 272; 8 Vt. 561; 15 Johns. 247; 32 Barb. 296; 1 Hill 516; 3 W. Va. 622; 3 Call 204; 2 Cas. & Paine 20; 4 Esp. 158; Brandt Suretyship § 79; *Id.* § 2; 35 Mich. 42; 21 How. 66; 1 Fla. 327; 6 Ill. 581; 31 Me. 188; 10 Mo. 559; 10 Johns. 180; 31 Barb. 297; 23 Vt. 561; 2 Gill. & J. 493; 10 Md. 27; 20 Md. 248; Code p. 631 § 2; 4 Min. Inst. part II. p. 908; 22 Gratt. 573; 7 Watts 163; 2 B. Mon. 254; 1 Johns. Chy. 354; 2 McL. 59; 20 Ia. 943; 40 Vt. 219; 1 Blackf. 310; 5 Blackf. 129; 10 Serg. & R. 144; 35 Ia. 543; 25 Cal. 545; 8 Cow. 437; 16 Johns. 152; 6 Wend. 613; 2 Pars. Bills 203; 26 Ga. 426; 34 Mo. 547; 42 Me. 549; 4 N. H. 221; 30 Ga. 306; 25 Ia. 221; 12 Ia. 55; 45 Me. 183; 30 Vt. 148; 1 Freeman Chy. 548; 23 Ga. 368; 13 Ia. 289; 19 La. 453; 26 Ill. 469; 1 Stew. 11; 15 La. An. 522; 27 Ill. 323; 9 Ala. 949; 31 Ill. 258; 55 Ga. 656; 16 Wis. 666; 53 Mo. 153; 49 Ga. 309; 55 Mo. 31; 28 Me. 280; 7 El. & Bl. 431; 2 El. & El. 424; 2 Metc. (Ky.) 247; 17 Conn. 97; 11 Md. 285; 5 Kan. 483; 6 Ga. 44; 46 Ill. 428; 3 Tex. 215; 5 W. Va. 140; 10 W. Va. 470.

*A. J. Clarke* for appellee cited the following authorities: Code, ch. 131 § 18; Freeman Jdgmts. § 163; Reporter, May 3, 1882, p. 572; 4 Leigh 88; 21 Gratt. 556; 26 Gratt. 638; 13 W. Va. 426; 2 Dan. Neg. Inst. § 1266; Story Prom. Notes §§ 104, 404, 438; 29 Gratt. 225; 11 R. I. 609, 618; 7 How. 220; 17 Curtis 97; 10 W. Va. 87, 95; Code, ch. 74 § 2; 10 W. Va. 321; 3 Call 234; 26 Gratt. 638; 21 Gratt. 567; 13 W. Va. 426; 5 Wend. 490; 23 Cal. 322; Edwds. Bills 200; 2 Pars. N. & B. 205, 219; 2 Dan. Neg. Inst. § 1272; 15 Serg. & R. 162; 29 Gratt. 226; 9 W. Va. 73, 76, 77; 10 W. Va. 662; 8 W. Va. 549; 21 Gratt. 556; Lead. Cas. Bills & Prom. Notes 642; Thompson's Nat'l Bk. Cas. 883, 890; 7 How. 220; Rev. Stat. U. S. §§ 5133, 5136; 20 Minn. 204; Thomp. Nat'l Bk. Cas. 935; 94 U. S. 673.

SNYDER, JUDGE, announced the opinion of the Court:

The first error complained of, is that the circuit court improperly overruled the demurrer to plaintiff's bill.  This objection seems to be founded on the averment of the bill, that the plaintiff's judgment against the administrator of B. S. Good is a *lien* on the real estate therein mentioned, and the prayer asking that said *lien* may be enforced.  It is true the bill does so state, but it, also, avers that the said B. S. Good was long prior to the date of the deed conveying said real estate indebted to the plaintiff by note for one thousand four hundred dollars, which note by renewals from time to time continued said indebtedness until the said note of November 25, 1872, was given as the final renewal for said debt.  And in addition to the prayer for specific relief, the bill contains a prayer for general relief.  The plaintiff's judgment against the administrator was certainly not a lien on the said real estate, nor was it even *prima facie* evidence of any indebtedness against the grantee and beneficiaries in said deed.  If, therefore, the bill had not contained other sufficient averments and a prayer for general relief, the demurrer should have been sustained.  But, if the objectionable portions of the bill are excluded as surplusage, the remaining averments and prayer are still sufficient to entitle the plaintiff to relief, and the demurrer was therefore properly overruled.  *Beall* v. *Silvey,* 2 Rand. 401 ; *Cook* v. *Mancius,* 5 Johns. Ch. 99.

The second and third assignments of error present the question, first, whether or not a judgment against an administrator is conclusive or even *prima facie* evidence against the devisee or heir of the real estate, the administrator against whom the judgment was recovered being also the heir or devisee ; and, second, if not, then is the decree in this cause, which takes the amount of the judgment against the administrator as the foundation of the plaintiff's claim and gives interest thereon from the date of such judgment warranted by the law of this State ?

Freeman on Judgments § 163, after announcing the general rule that proceedings against the executor or administrator of an estate do not preclude a defense on original grounds by the devisee or heir of such estate, states that cases in which the executor or administrator and the devisee or heir are the same person are exceptions to the rule.  "For

though in this case," says this author, "the party claims in two capacities, a judgment against him in one capacity is also conclusive against him in the other. He represents the interests of one and the same person; and has full opportunity, in a suit against himself as personal representative, to protect his rights as successor to the realty." In support of this doctrine, two cases only are cited, the one from Pennsylvania, *Stewart* v. *Montgomery*, 23 Pa. St. 410, and the other from Alabama, *Boykin* v. *Cook*, 61 Ala. 473. Upon an examination of these cases I find that they grow out of the statute laws of those States and have no application where such statutes do not exist. The general doctrine, without qualification or exception is well settled in Virginia and in this State, that "there being no privity between the personal representative and the party to whom the real estate passes, a judgment against such personal representative is not even *prima facie* evidence against the heir or devisee." *Laidley* v. *Kline*, 8 W. Va. 218; *Custer* v. *Custer*, 17 *Id.* 113; *Mason* v. *Peters*, 1 Munf. 437; *Foster* v. *Crenshaw*, 3 Munf. 520; *Shields* v. *Anderson*, 3 Leigh 736. In *Brown* v. *Lawson*, 76 Va. R., the questions here presented was not passed upon, but the court in that case, after referring to the rule laid down by Freeman, says: "The inconvenience and apparent hardship of the rule, as it is understood in Virginia, may generally be obviated. In most cases, certainly in cases of liquidated demands and when there is a known deficiency of personal estate, the creditor need not proceed against the personal representative separately in the first instance, but may bring him and his heirs or devisees before the court in the same suit in equity, and thus avoid the hazard, delay and expense of a repeated litigation of the same matter." This is the usual course in this State, and I see no reason or necessity for making the mere fact, often accidental, that the heir or devisee may, instead of a legatee or stranger, become the executor or administrator of an estate, the basis of changing the rule and making the judgment conclusive in the one case while it is not even *prima facie* evidence in the other. My conclusion, therefore, is that by the law and policy of this State a judgment against the personal representative of an estate is not even *prima facie* much less conclusive

evidence against the devisee or heir of such estate, and the fact the same person may be both personal representative and heir or devisee does not constitute an exception to the rule. The said judgment against J. Hanson Good as administrator being not even *prima facie* evidence against him as grantee of the real estate, it follows of necessity, that said judgment is not evidence of any debt for which the real estate in the bill can be charged. The plaintiff's right to subject said real estate can arise alone out of the debt for which the note of November 25, 1872, was given. The said judgment in this suit must be entirely discarded. And said note, which the plaintiff concedes, represents the whole of said debt which remains unpaid, having became due on the 23d day day of February, 1873, the plaintiff could only recover, the amount of said note one thousand four hundred dollars with interest thereon from February 23, 1873, to May 23, 1881, the date of the decree. And according to our statute—sec. 16 ch. 131 of the Code—the decree should have been for the aggregate of principal and interest to the latter date, May 23, 1881, with interest thereon till paid. But instead of so ordering the court gave a decree for one thousand five hundred and eighty-nine dollars the amount of said judgment with interest thereon from May 29, 1874, till paid. This was manifest error, and this error being to the prejudice of the appellant in a sum exceeding one hundred dollars, it being according to an estimate made by me one hundred and sixty-one dollars and eighty cents, the said decree must be reversed therefor.

We come now to the material question in this cause raised by the fourth and last assignment of error. It is insisted by the appellant that, Benoni S. Good, being simply a surety, the pre-existing debt of the plaintiff, as to him, was extinguished when the note of November 25, 1872, was given, discounted by the plaintiff and the precedent note surrendered to M. C. Good; and that the said note of November 25, 1872, being, as to said B. S. Good, the creation of a new debt, contracted after the conveyance of October 14, 1872, had been executed and recorded, the validity of said conveyance, although voluntary, cannot be questioned on account of said debt, so subsequently created.

In support of this position attention is called to the well established equity rule, that "Sureties are never held responsible beyond the clear and absolute terms and meaning of their undertakings, and presumptions and equities are never allowed to enlarge or in any degree to change their legal obligations." The soundness of this rule will not be questioned; but the difficulty is to determine the character and extent of the undertaking and legal obligation of the said B. S. Good in respect to the plaintiff's debt in this cause. It must be conceded that, at the time said conveyance of October 14, 1872, was made said B. S. Good was liable to the plaintiff for a debt of one thousand four hundred dollars, upon a positive contract—a note for that sum, signed by him, and that said debt has not been paid or discharged unless the giving of the note of November 25, 1872, by the same parties for the same amount and the acceptance of that note, receiving the discount thereon for ninety days and the surrender of the precedent note by the plaintiff to M. C. Good, constitutes a legal payment or discharge of said debt. Did this transaction pay the old and create a new debt?

We shall first enquire what the legal effect of giving said new note and surrendering the previous one was upon M. C. Good the principal debtor.

In *Porter* v. *Talcott*, 1 Cow. 380, it is stated that, "the law is well settled, that a note given by the debtor for a precedent debt, is no payment of the original demand, unless it is *expressly agreed* to receive it in payment." The following cases hold the same doctrine : *Tobey* v. *Barbor*, 5 Johns. R. 72; *Dœbling* v. *Loos*, 45 Mo. 150 ; *Sutliff* v. *Atwood*, 15 Ohio St. 186 ; *Lear* v. *Friedlander*, 45 Miss. 559 ; *Ins. Co.* v. *Smith*, 6 Har. & J. 166 ; *Cole* v. *Sackett*, 1 Hill 516 ; *Eastman* v. *Porter*, 14 Wis. 39.

"To give to the acceptance of a note the effect of an absolute payment, or extinguishment of a debt, *a contract*, that it should be so, *must be shown*"—*Glenn* v. *Smith*, 2 Gill. & J., 493.

In *Kibbey* v. *Jones*, 7 Bush. 243, it was held that, "the renewal of a note executed before June, 1866, so as to include with it another debt created after that date, did not operate as a payment of the first note, but only as a renewal of the

obligation to pay. The homestead was subject to that part of the aggregate note which was a renewal of the note executed before the homestead exemption act took effect."

Some of the Virginia cases hold, that, in order to make one instrument given by the same parties an extinguishment of another, the one so given must be of a higher dignity than the former; and, therefore, even when it is agreed that the new note shall be an extinguishment of the old, such an agreement is a *nudum pactum*, and will, if the new note is not paid, not operate as an extinguishment of the old—*McGuire v. Gadsby*, 3 Call 234; *Herrington v. Hawkins*, 1 Rob. 391; *Parker v. Cousins*, 2 Gratt. 373. But whether this be the correct doctrine or not, it is well settled in both Virginia and this State, that a note will not be regarded as an absolute extinguishment or payment of a precedent note or pre-existing debt, *unless it be so expressly agreed*—whether the note received was that of one previously bound, or of a stranger; and it will not be so regarded, even when *so expressly received*, if such agreement was procured by fraudulent concealments and representations—*Poole v. Rice*, 9 W. Va. 73; *Lazier v. Nevin*, 3 *Id.* 627–8; *Miller v. Miller*, 8 *Id.* 550; *Dunlap v. Shanklin*, 10 *Id.* 662; *Feamster v. Withrow*, 12 *Id.* 611; *Bantz v. Basnett*, 12 *Id.* 772; *Sayre v. King*, 17 *Id.* 562; *Farmers' Bank v. Mutual Asso. So.*, 4 Leigh 88; *Moses v. Trice*, 21 Gratt. 556; *Tardy v. Boyd*, 26 *Id.* 638; *Lewis v. Davis*, 29 *Id.* 225.

In *Farmers' Bank v. Mutual Association Society, supra,* the court says: "Equity looks to the substance, not to the forms of things. Equity sees that when a dealer at bank pays off a note by renewal, the debt is the same; *the debt remains unpaid*, and the credit only is extended." 4 Leigh 88.

In *Bantz & Co. v. Basnett, supra,* it was held by the whole court, that the payment of a part of a note *before* it became due and the giving of a new note for the residue by the debtor with an *express agreement* that the old note shall be surrendered, such agreement being founded upon a valuable consideration, extinguished the old note. But whether, after the old note *had become due*, such payment, new note and express agreement would have extinguished the old note, was the question upon which the Court divided—Johnson J.

holding that such agreement, being without consideration, would not extinguish the old note, and Moore and Green J. J. holding that whether it would or would not extinguish the old note was a question of fact for the jury under all the circumstances. The position of none of the judges in this case questions the doctrine before stated, that a new note by the same parties will not extinguish a precedent note or debt unless it is so expressly agreed between the parties.

"The delivery or surrender to the maker of the old note upon its being renewed, does not in itself raise a presumption of its extinguishment by the new, it being considered as a conditional surrender, and that its obligation is restored and revived if the new note be not paid, and the same rule applies when the new note has been carried to judgment, but without satisfaction." 2 Dan. on Nego. Inst. § 1266 a, and cases cited.

In Parsons on Notes & B., vol. 2 p. 203, it is stated, that "The renewal of bills and notes presents the question of payment in a different light. Whatever may be the law with regard to payment and satisfaction of a pre-existing debt by bill or note, the general custom and understanding of the mercantile world *would seem to demand* that a new note, given in renewal of an old one which is taken up, as it is termed, should pay and cancel the old note for which it is given." This is a mere opinion of Prof. Parsons, as he cites no precedent to sustain it. This position is expressly repudiated in 2 Dan. on Neg. Inst. § 1266 a, and in *Nightingale* v. *Chafee*, 11 R. I. 618.

Without further citation of authorities, I think it may be safely concluded from those which have preceded, that the giving of a new note for an old one which had become due, the amount and makers of the two notes being the same, will not be treated as a payment or extinguishment of the old note or pre-existing debt, unless the parties so *expressly* agree; but will be regarded merely as an extension of credit upon the debt; and the surrender of the old note will not of itself raise a presumption of such agreement to extinguish the old note by the new one, it being considered as a conditional surrender and that its obligation is restored and revived, if the new note is not paid. And the new note will

not be regarded as a payment of the old even when it is so expressly agreed, if such agreement was obtained by the concealment of any material fact affecting the security of the debt; nor does the presumption of any payment apply where the creditor abandons some security which he held when he takes the new note.    2 Dan. on Neg. Inst. § 1267.

Does the surety on a joint and several non-negotiable note, such as the note in this case, occupy a relation to the payee or creditor different from that of his principal? And can he make any defense to the debt evidenced by such note which could not be made by the principal, except defenses, which arise out of statutory provisions such as giving notice to the creditor to sue after the note has become due, &c.?

In 1 Dan. on Neg. Inst. § 348, it is stated that, "Where one of two or more joint and several makers of a promissory note adds to his signiture the word *surety*, being such in fact, he becomes liable thereon, to the payee or holder, as a maker of the note.    The signers are liable to the holder as principals." *Robinson* v *Lyle*, 10 Barb. 515; *Sisson* v. *Barrett*, 6 *Id.* 199; S. C. 2 Comst. 406; *McLaughlin* v. *Bank of Potomac*, 7 How. 220.

All the authorities so far as I have been able to discover, except in special cases and statutory limitations which have no application here, hold the doctrine that the holder of a note has the same legal rights against the surety that he has against the principal maker.    And this doctrine evidently proceeds upon the most natural interpretation of the contract. *Bull* v. *Allen*, 19 Conn. 101; *Davis* v. *Huggins*, 3 N. H. 231; *Frye* v. *Barker*, 4 Pick. 382; *Croughton* v. *Duval*, 3 Call 69; *Lenox* v. *Prout*, 3 Wheat. 524; *Pugh* v. *Cameron*, 11 W. Va. 523.    I have been unable to find any authorities to sustain the distinction attempted to be made by the counsel for the appellant.

It is, however, claimed by the appellant that, under section 33 of chapter 58 of the Code of Virginia, a bank could not loan money for a period exceeding six months, and that therefore the courts will presume the bank has not violated the law by loaning for a longer period.    Without stopping to enquire, whether or not any such law is now in force in this State, or if so, whether it applies to a National bank such as

the plaintiff, I am satisfied that the law is not amenable to such an interpretation as that contended for by the appellant. The object of this statute was to prevent banks from exacting interest in advance for a period in excess of six months, but it was not intended to deny them the right to renew notes from time to time and thus continue the loan indefinitely.

Applying the foregoing principles to the case before us and the result is obvious. On the 14th day of October, 1872, Benoni S. Good was, as surety for M. C. Good, indebted to the plaintiff for a sum equal to the debt here sued for. At that time he had real estate worth twenty thousand dollars, and so far as this record shows that was all the property he had, and it does not appear that the principal in the debt or the other surety had any property whatever. On the day aforesaid Benoni S. Good, by a voluntary deed, conveyed the whole of said real estate; and after such conveyance, on the 25th day of November, 1872, without disclosing the fact of such conveyance to the bank, his creditor, he and the other debtors executed and delivered to the bank a new note for the same amount and took up the old one, paying the discount on the former for ninety days to come. If said B. S. Good by this transaction intended to escape liability for said debt, it was actual fraud on his part, and if he did not so intend, as I infer he did not, then he intended still to be bound for the debt; consequently, in either event, he was not discharged from liability, and it is equally clear that, said debt not having been paid, the said voluntary conveyance cannot prevent the real estate therein conveyed from being made liable for the said debt—*Hunters* v. *Waite,* 3 Gratt. 33; *Lockhard & Ireland* v. *Beckley,* 10 W. Va. 87. But, however this may be, the giving of the note of November 25, 1872, did not, as we have seen, operate as a payment of the pre-existing debt, there being no *express agreement* that said note should be received by the plaintiff as such payment; and therefore, the said Benoni S. Good, being indebted to the plaintiff for the debt here sued on at the time he made said voluntary conveyance of October 14, 1872, the real estate thereby conveyed is bound for the payment of said debt, and the circuit court did not err in so holding.

But for the error, hereinbefore pointed out, the said decree of the circuit court of Ohio county, entered on the 23d day of May, 1881, must be reversed and annulled with costs to the appellant against the appellee, the Merchants National Bank of West Virginia at Wheeling; and this cause is remanded to said circuit court with directions to said court to take such further proceedings in the cause as may be necessary to carry into effect the principles settled by this opinion and further according to the rules and practice of courts of equity.

Johnson, President, concurred in the foregoing opinion and syllabus, except so far as it is held by implication, that the giving of a new note after maturity of the old note by same parties for the same amount extinguishes the old note and debt, where it is expressly agreed that such shall be the effect. Such an agreement is without consideration and a mere *nudum pactum*. *Bantz* v. *Basnett*, 12 W. Va. 782.

JUDGE GREEN CONCURRED WITH SNYDER, J.

DECREE REVERSED.   CAUSE REMANDED.