## BABCOCK *vs.* MORSE and others.

On the 4th of March, 1848, M. & W. executed a mortgage to the plaintiff and B. to secure the payment of all such sums as the mortgagees should become liable for by accepting or signing for the mortgagors any notes or drafts, &c. and of all moneys advanced to them, &c. ' Soon after this, M. & W. drew drafts on the mortgagees to the amount of $850, which the latter accepted. Other drafts were drawn and accepted, by the same parties, upon renewals, from time to time, until March 22, 1851, when there was due thereon $850. On that day M. made a draft on the firm of B., D. & H. and on the 4th of April he drew another draft on them, each of which he procured to be discounted, and remitted the proceeds, $850, to the plaintiff, to meet the acceptances of the plaintiff and B. This was done under an arrangement made between M. and the plaintiff and B., D. & H., to the effect that M. might draw on the firm for the purpose of meeting said original acceptances, and that the plaintiff would indemnify B., D. & H. against loss. In an action to foreclose the mortgage executed by M. & W., it was insisted by the defendants that the receipt, by the plaintiff, of the proceeds of the drafts drawn upon B., D. & H. to meet the acceptances of the plaintiff and B., was a payment of the debt for which the mortgage was then a security, and that consequently the action would not lie.

*Held,* that the plaintiff, by the arrangement made with M. and the receipt of the proceeds of the acceptances of B., D. & H., was not discharged from any liability, nor was his liability substantially changed, except in respect to further credit. That as between him and the firm of B., D. & H. he was the principal debtor, and they were his sureties. That as to him the transaction was but a renewal of drafts, and the mortgage continued to be security for his liability ; and that it might be foreclosed by him, upon the non-payment of the drafts drawn upon the firm.

APPEAL, by the plaintiff, from a judgment entered upon the report of a referee. The following facts were found by the referee, viz : That a bond and mortgage, dated March 4th, 1848, were executed by the defendants, Morse & Wiggin, to Nathan Babcock, the plaintiff, and one Gaius C. Burnap, to indemnify them for all such sums as they should become liable for by accepting or signing for said Morse & Wiggin, or either of them, and for all money advanced to them, or either of them, and all debts, liabilities or claims that said Babcock & Burnap, or either of them, should have or hold against said Morse & Wiggin, or either of them. That after the date of said bond and mortgage, Morse & Wiggin, who were then partners, made drafts

on Babcock & Burnap, who were then partners, and thus received advances of money, until Dec. 31st, 1850, when the firm of Babcock & Burnap was dissolved. At the time of such dissolution Morse & Wiggin were indebted, on the mortgage, in the sum of $850 on drafts, which had grown from successive renewals. That on January 1st, 1851, a new firm, Babcock, Dubuisson & Hall, was formed, the plaintiff being one of that firm. That subsequently an arrangement was made, by which Morse, successor of Morse & Wiggin, drew on the firm of Babcock, Dubuisson & Hall, in order to meet the drafts which had been drawn on Babcock & Burnap; the drafts so drawn were dated April 3d, 1851, and were payable July 15th, 1851. That the inducement for this firm to make advances was the verbal promise of the plaintiff, that he would indemnify them against loss. That on the 14th February, 1851, Burnap assigned all his interest in said bond and mortgage to Babcock. That on the 14th April, 1852, Babcock commenced this action to recover the indebtedness of Morse growing from said last named drafts, then being unpaid, claiming that the balance due was $850, and claiming that such balance became due in March, 1851. That the other defendants have a right in the mortgaged premises, adverse to the plaintiff, and which right accrued subsequently to the plaintiff's mortgage. That the amount, $850, due on the mortgage at the time of the dissolution of the firm of Babcock & Burnap, was subsequently paid by Morse, by the drafts drawn on Babcock, Dubuisson & Hall. That the arrears now due from Morse were for moneys drawn from Babcock, Dubuisson & Hall, after the firm of Burnap & Babcock had been dissolved. That Babcock, Dubuisson & Hall never rested on the mortgage for their security, and looked only to Babcock to indemnify them for loss. That if Babcock had a claim against Morse, it was not for money he advanced, nor for renewal of notes, but for his liability as surety for Morse to Babcock, Dubuisson & Hall. That the complaint only claimed for money due to Babcock in March, 1851, before he became liable as surety, and which money had been fully paid. The referee further reported that, as a conclusion of law, there was nothing due to the plaintiff on the bond and

mortgage named in the complaint, and that the mortgaged prem-
ises should not be sold on said mortgage, but that judgment
should be rendered for the defendant.

*W. S. Bishop,* for the appellant.

*E. Griffin,* for the defendants.

*By the Court,* T. R. STRONG, J.    The mortgage in this case
was executed the 4th of March, 1848, by the defendants, Morse
& Wiggin, and the wife of the latter, to the plaintiff and one
Burnap, to secure the payment to the mortgagees of all such sums
as they should become liable for by accepting or signing for the
mortgagors any notes or drafts or bonds; and of all moneys
advanced to the latter, or either of them; and all debts, liabili-
ties and claims that the mortgagees, or either of them, should
have or hold against Morse & Wiggin, or either of them.
Soon after, or about the time of the execution of the mortgage,
Morse & Wiggin drew drafts on the mortgagees to the amount
of $850, which the latter accepted, and other drafts were sub-
sequently drawn and acceptances given by the same parties,
upon renewals from time to time, until the 22d of March, 1851,
when there was due thereon the amount named.    It is conceded
by the counsel for the defendants, that this mortgage was at
that time a valid security for that sum.    The plaintiff was then
the sole owner of the mortgage, having taken an assignment
from Burnap of his interest.    At that date, the defendant
Morse, in pursuance of an arrangement which had been made
between him and the plaintiff and a firm of Babcock, Dubuisson
& Hall, of which the plaintiff was a member, made a draft on
that firm, and on the 4th of April following drew another draft
on them, both payable in July then next, each of which drafts
he procured to be discounted about the time it was made, and
the proceeds of which, being $350 and $500, he thereupon
remitted to the plaintiff, to meet the acceptances of the plaintiff
and Burnap.    The arrangement referred to was, that Morse
might draw on the firm for the purpose of meeting the accept-

ances last named, and that the plaintiff would indemnify them against loss. It is found, by the referee, that the firm did not rely upon the mortgage for their security, but looked only to the plaintiff to indemnify them. This action was commenced the 14th of April, 1852; and the default in complying with the condition of the mortgage, alleged and relied upon in the complaint, is the omission to pay the sum of $850, which became due the 22d of March, 1851. The defendants Edgall, Gould and Smith only have appeared in the action, and they have interests in the mortgaged premises which accrued subsequent to the mortgage in question, and prior to the 22d of March, 1851. The defense set up by them is, payment of the sum due on the mortgage at the date last aforesaid. The defendants' counsel insists that the receipt by the plaintiff of the proceeds of the drafts upon the said firm, to meet the acceptances of the plaintiff and Burnap, was a payment of the debt for which the mortgage was then security, and that therefore this action cannot be maintained; and so the referee decided. I understand the referee to hold that the debt arising from the acceptances of the plaintiff and Burnap was thereby paid and extinguished; that the drafts upon and acceptances of the firm created a new debt; and that if the plaintiff has any claim against Morse, it is only one arising out of his being surety for Morse to the said firm; and that the complaint is not adapted to such a demand.

The evidence in the case does not show that was intended by Morse, or the plaintiff, that the proceeds of the drafts of the firm should be payment of the claim then held by Babcock, whether those drafts should be paid or not; and as those drafts have not been paid by Morse, it would certainly be highly unjust to the plaintiff to hold, in the absence of such evidence, that they were such payment, if the effect would be, as the defendants claim, to deprive the plaintiff of the security of the mortgage. It clearly appears that it was not intended that the mortgage security should be in any respect impaired.

If Morse had drawn upon the plaintiff to meet the acceptances of the plaintiff and Burnap, and the plaintiff had accepted

his drafts and received the proceeds to the full amount due on the mortgage, it would not be contended that the demand secured by the mortgage was thereby paid; the transaction would be simply a renewal of the evidence of indebtedness, and an extension of credit for the period the drafts were to run. It has often been held that a renewal of notes secured by mortgage, or judgment, is not a satisfaction or extinguishment of the original debt, so as to affect the continuance of the security. (*Dunham* v. *Dey*, 15 *John.* 554. *Brinckerhoff* v. *Lansing*, 4 *John. Ch.* 65. *The Bank of Utica* v. *Finch*, 3 *Barb. Ch.* 293.) So if the plaintiff had given his promissory notes and taken up the drafts on him and Burnap, the effect would be the same; it would be a mere renewal. And if he had procured others to unite with him in the note, as his sureties, it is not perceived that the result would be different.

What difference is there in principle, between the present case and the case supposed? The plaintiff, by the arrangement with Morse and the acceptances of the firm, and receipt of the proceeds by him, has not been discharged in whole or in part from any liability, nor has his liability been substantially changed, except in respect to further credit. He procured the firm to accept the drafts, upon his promise to indemnify them. As between him and the other members of the firm, they are his sureties; and he is the principal debtor. His position is not materially different from what it would be if he alone had given those acceptances. As to him, the transaction was but a renewal of drafts. This appears to me to be plain; and thus regarding it, the mortgage continued to be security for his liability, and the drafts upon the firm not having been paid by Morse, the indebtedness on the 22d of March, 1851, has not been satisfied, but still remains.

It follows that the judgment appealed from must be reversed, and a new trial granted; costs to abide the event.

[MONROE GENERAL TERM, December 4, 1854. *Johnson, Welles* and *T. R. Strong*, Justices.]