# WHEELING.

HOPKINS & JANNEY *v*. DETWILER & Co.

Submitted January 28, 1885.—Decided April 18, 1885.

A negotiable note payable to A. H. Detwiler & Co. is secured by a deed of trust executed by the makers. Just before this note became

due the makers of the note applied to A. H. Detwiler to permit them to draw a draft on Detwiler & English, a firm in which A. H. Detwiler is a partner, for the amount of this note payable in ninety days, and he for the firm of Detwiler & English agrees that this may be done for the accommodation of the makers of this negotiable note, they proposing to take up this negotiable note with this draft and to pay the draft when it falls due. This draft was accordingly so drawn payable in ninety days. The makers of this note, the drawers of the draft, had the draft discounted by a bank, which held the negotiable note for collection, and the bank surrendered the negotiable note to them and sent the proceeds of the note to the parties, to whom the negotiable note was due ; and the makers of the negatiable note at once sent it to Detwiler & English, the parties on whom they drew the draft. At the expiration of the ninety days, when the draft became payable, the drawers of it, the makers of the negotiable note, failed to pay it according to their promise, and the parties on whom it was drawn, Detwiler & English, paid it. And thereupon A. H. Detwiler & Co,, the payees of the negotiable note, paid to Detwiler & English the full amount of the note, that being the amount, which they had paid to take up the draft; and Detwiler & English transferred the negotiable note to the payees of it, A. H. Detwiler & Co. HELD :

> This note will not be regarded by a court of equity as paid or satisfied ; but the credit on the debt represented by it will be regarded as simply extended for ninety days ; and the payment of this negotiable note may be enforced by A. H. Detwiler & Co. out of the property conveyed by the deed of trust for its security.

GREEN, JUDGE, furnishes the following statement of the case :

The members of the firm of J. B. Detwiter & Co., millers, of Wheeling, W. Va., and their wives on July 16, 1864, executed a deed of trust to J. S. Wheat and Sobieski Brady, trustees, of Wheeling on certain real estate in Wheeling to secure first, a debt due to Hopkins & Janney, merchants of Baltimore, Md., evidenced by a negotiable note of $5,000 executed by Detwiler & Co to Hopkins & Janney dated July 16, 1864, payable five years after date, the interest payable semi-annually, and to secure any note or notes which may be given in renewal or extension of said note either in whole or in part, the deed of trust providing : "It being hereby understood that, if the said J. B. Detwiler & Co. or the said Hopkins & Janney shall upon the maturity of said note

wish to extend the time of the payment thereof for a like period of five years, they or either of them shall have that privilege. *Secondly*, to secure to A. H. Detwiler & Co. for several notes dated July 16, 1864, payable and negotiable at the Merchants' and Mechanics' Bank of Wheeling, the first for the sum of $2,600.00 payable twelve months after date, the second for the sum of $2,480.00 payable two years after date, the third for the sum of $2,360.00 payable three years after date, the fourth for the sum of $2,240.00 payable four years after its date and the fifth for the sum of $2,120.00 payable five years after its date amounting to $11,800.00; also to secure any note or notes, that may be given in renewal or extension of any one or more of said notes either in whole or in part, and *thirdly* to secure also the payment of the debts before mentioned, the payment of any sum or sums of money for the payment whereof the said Hopkins & Janney may hereafter become in any manner liable for the account or accomodation of J. B. Detwiler & Co., to an amount not exceeding $5,000.00 whether the liability may have been incurred as acceptors or endorsers of J. B. Detwiler & Co., or in any other manner whatsoever." J. B. Detwiler & Co., were required by this deed of trust to keep the property conveyed, as mill and other perishable property, insured for the benefit of the *cestui que trust* in an amount not less than $15,000.00. This deed of trust was acknowledged and duly admitted to record on August 3, 1864. Shortly thereafter, in August 1864, by an agreement between Hopkins & Janney and J. B. Detwiler & Co. under the provisions for debts in the third class in this deed of trust as above quoted, J. B. Detwiler & Co. drew a sight-draft for $3,000.00 on Hopkins & Janney on August 13, 1864, and a like sight-draft for $2,000.00 on August 20, 1874. These two drafts were paid on sight by Hopkins & Janney.

On July 21, 1866, the property conveyed by this deed of trust was destroyed by fire. This was only two days after the second note for $2,480.00 secured in the second class in this deed of trust fell due. This fire rendered J. B. Detwiler & Co. insolvent. After much litigation the trustees, Wheat and Brady, collected the insurance, which under the provisions of this deed of trust had been taken in different

insurance-companies at different times, in all $16,326.75.
Before this fire occurred J. B. Detwiler & Co. paid the first
negotiable note secured in the second class in said deed of
trust for $2,600.00 due on July 19, 1865, to A. H. Detwiler
& Co.   Out of the funds which came into the hands of the
trustees they, or rather their counsel, Wheat & Forbes, paid
to Hopkins & Janney the debt of $5,000.00 evidenced by the
negotiable note of J. B. Detwiler and secured first in said
deed of trust.     But, a controversy having arisen between
Hopkins & Janney and A. H. Detwiler & Co., as to whether
J. B. Detwiler & Co. had paid off at maturity on July 19,
1866, their negotiable note for $2,480.00 payable and nego-
tiable at the Merchants' and Mechanics' Bank of Wheeling,
the trustees Wheat and Brady refused to pay to Hopkins &
Janney anything on the two drafts of J. B. Detwiler & Co.,
for $2,000.00 and $3,000.00 respectively, which they had ac-
cepted and paid at sight, and which were secured in the third
and last class in said deed of trust.     There was in the
hands of these trustees Wheat and Brady, or their counsel after
the payment of the negotiable note of $5,000.00 due to Hop-
kins & Janney and first secured more than enough to pay the
third, fourth and fifth negotiable notes to A. H. Detwiler &
Co., secured in the second class in said deed of trust, but not
enough to pay in addition the whole of the second of said
notes, which fell due on July 19, 1866, the first of said five
notes so secured having been paid by J. B. Detwiler & Co.
So that, if in fact this second of said notes for $2,480.00 had
been paid by J. B. Detwiler & Co., then a considerable bal-
ance was in the hands of the trustees, Wheat and Brady, appli-
cable to the payment to Hopkins & Janney of the $5,000.00
they had paid on the two drafts of J. B. Detwiler & Co., and
which are secured in the third class in said deed of trust.
But if in fact this second note of G. B. Detwiler & Co., of
$2,480.00 due July 19, 1866, had not been paid at maturity
by J. B. Detwiler & Co., then the whole balance in the hands
of the trustees, Wheat and Brady was payable to A. H. Det-
wiler & Co., on the notes still unpaid and secured in the second
class in said deed of trust.     But the trustees refused to assume
the responsibility of deciding this dispute and would not pay
over this fund in controversy to either party, till the court

should decide to whom it was properly payable. Hopkins & Janney therefore brought a suit in chancery in the circuit court of Ohio county on January 31, 1871, making these trustees, Wheat and Brady, and their attorneys, Wheat & Forbes, in whose hands the funds in controversy were, A. H. Detwiler & Co., the other claimants of this fund, and J. B. Detwiler & Co., for the purpose of getting a decision by the court of this dispute. The plaintiffs filed their bill at February rules 1871. But it was lost; and nothing was done in the cause for some twelve years.

After some years Wheat & Forbes, attorneys for the trustees, Wheat and Brady, as nothing had been done by the plaintiffs, Hopkins & Janney, beyond filing their bill, which was lost, determined to pay over the fund in controversy to the claimants of A. H. Detwiler & Co.; but as this suit was still on the docket and not abandoned, they required an indemnifying bond to be given them before paying over the fund, and such bond was given. Some years afterwards, on January 19, 1883, the plaintiffs, Hopkins & Janney, by leave of the court filed a bill to supply the loss of the original bill and the defendants, J. B. Detwiler, A. H. Detwiler & Co. and H. Forbes, filed answers claiming that this note of $2,480.00 executed by J. B. Detwiler & Co. to A. H. Detwiler & Co., due July 19, 1886, secured by said deed of trust was not paid at maturity by J. B. Detwiler & Co., but that at the time, when the debt represented by it was due, it was simply extended for ninety days by a draft drawn by J. B. Detwiler & Co. on Detwiler & English, a Philadelphia firm, of which A. H. Detwiler was the most prominent member. To these answers there was put in a general replication. In reference to this question of controversy the plaintiffs took the deposition of John Wagner who was cashier of the National Bank of West Virginia, where his deposition was taken August 30, 1884, which deposition was excepted to by the defendants. The defendants took the depositions of James W. English, a former clerk of A. H. Detwiler & Co., and of A. H. Detwiler and Isaac Detwiler, of the firm of A. H. Detwiler & Co. The pleadings and evidence in the cause show all the facts above stated; and in reference to this question in dispute, as to whether this negotiable note of $2,480.00 was or was not

paid by J. B. Detwiler, the substance of the statements of the parties and of the evidence is as follows: J. B. Detwiler in his answer says in reference thereto :

"When the second note became due, the said second note was in one of the Wheeling banks for collection, and as our firm of J. B. Detwiler & Co. were not able to meet it, we asked the privilege of the firm of Detwiler & English, of Philadelphia, to draw upon them for the amount of said note at ninety days in order to save the credit of our firm. We always considered Mr. A. H. Detwiler, who was the principal man or member of both the firm of Detwiler & English and of A. H. Detwiler & Co., to be the real owner of the said notes given and secured by us as aforesaid, and the request was made more to him than to the said firm of Detwiler & English. They gave us permission to draw upon them at ninety days, but they still kept our note, and it was not to be considered paid ,unless we met and paid the ninety day draft. This we found ourselves unable to do when it became due, and so it went to protest, and they held both the note and the draft. This second note was never paid by us, and is still, so far as I know, in the hands of the said A. H. Detwiler & Co."

A. H. Detwiler & Co., in their answer in reference to this matter say :

"A short time before the second of said notes so secured to these defendants became due and payable, it was placed for collection in one of the Wheeling banks; and about the time of its maturity the makers of said note, the said firm of J. B. Detwiler & Co., requested the firm of Detwiler & English to allow them the privilege of drawing upon them for an amount sufficient to meet the said note when it became due. The firm of A. H. Detwiler & Co. being then dissolved and out of business, Mr. A. H. Detwiler, one of these defendants and respondents, was the principal member and managing partner of the firm of A. H. Detwiler & Co. while in existence, and also of the firm of Detwiler & English, then engaged in business in Philadelphia, Pennsylvania, and at the time of the maturity of this second note, he had it under his control. The request above spoken of of said J. B. Detwiler & Co. to draw upon the firm of Detwiler & English, was granted, and accordingly they drew upon said firm for an amount sufficient

to meet said note. Said draft was at ninety days. These defendants refer to said draft filed with H. Forbes's answer as Exhibit ' E ' and ask that it be read as a part of this answer. And it was understood and agreed, that, if the said draft was not paid at maturity, it was not to be considered a payment of the said note, and the said note was not given up but was still held by the said firm of A. H. Detwiler & Co., and as the said draft was not paid at maturity, the said note was never given up, but is still in the possession and the property of the firm of A. H. Detwiler & Co."

H. Forbes in his answer states that the second note of $2,480.00 was placed in his hands for collection by A. H. Detwiler & Co. ; and he produces and files it with his answer.

The deposition of John Wagner, cashier in behalf of the plaintiffs, is as follows:

" I am cashier of the National Bank of West Virginia at Wheeling. I find by reference to the books that on the 11th day of July, 1866, this bank received from John Jordan, Jr., president of the Manufacturers' National Bank of Philadelphia, Pennsylvania, for collection, a note made by J. B. Detwiler & Co., payable to A. H. Detwiler & Co., dated July 16, 1864, payable two (2) years after date for $2,480.00 ; that on the 20th of July, 1866, this bank remitted to the Manufacturers' National Bank of Philadelphia, $2,473.80, which with $6.20 exchange that was charged for collection, makes $2,480.00. The receipt of this remittance was acknowledged by the Manufacturers' National July 23, 1866. I further find that on the 19th of July, 1866, this bank (National Bank of West Virginia) discounted for J. B. Detwiler & Co. a draft drawn by them July 19, 1866, on Detwiler & English at ninety days for $2,480.00. This draft was enclosed by the bank July 19, 1866, to J. Hockley, cashier, Philadelphia, of the Bank of North America for collection, and was charged to that bank October 24, 1866. I make the foregoing statement entirely from the original entries in the books of the bank and from its correspondence. I have no personal knowledge of the facts as I was not then cashier of the bank. The foregoing is all that I find in relation to the transaction."

The deposition of James W. English, a former clerk of A.

H. Detwiler & Co., taken by the defendants, threw but little light on this subject. He states, that this second note, the subject of controversy, was paid by a draft on Detwiler & English at ninety days, which he thinks was protested, but he does not speak confidently, as he speaks only from memory. He says this draft was accepted by Detwiler & English, which A. H. Detwiler of that firm, had permitted J. B. Detwiler & Co. to draw on them to save this note, when it fell due. He was the confidential book-keeper of A. H. Detwiler & Co., but had not been in their employment for five years, and spoke from his memory and says he can speak with confidence, because he had been so conversant with the affairs of A. H. Detwiler & Co.

A. H. Detwiler deposes :

" When the second one came due, they asked the privilege of drawing on us at ninety days, stating that at the expiration of that time they would pay it. J. B. Detwiler & Co. asked the privilege of drawing on Detwiler & English, of which firm I was a member. They failed to pay the draft at maturity. They took up the note in Wheeling and gave it back to us. We threw the note of J. B. Detwiler & Co. in bank for collection. They took up their note with the draft on Detwiler & English. They returned us then the note to Detwiler & English. Detwiler & English transferred the note to A. H. Detwiler & Co. Detwiler & English had no interest in it, and the note was handed back to me (A. H. Detwiler.) When the draft came due at ninety days, Detwiler & English took up the draft, and A. H. Detwiler paid it to Detwiler & English." He states he gave this note to Wheat & Forbes, attorneys, to collect, and that it never had been paid. On cross-examination he says : " J. B. Detwiler & Co. did not get the note discounted. They got a draft discounted for the purpose of taking up the note. The draft was on Detwiler & English. They got this draft discounted to take up this note, and with the proceeds of the draft took up the note and sent it to Detwiler & English.

Isaac Detwiler, a member of the firm of A. H. Detwiler & Co., simply deposes that the second note was not paid. He gave no details of the transaction and his deposition really throws but little light on the matter in dispute.

This was all the evidence on this subject in the controversy. On October 11, 1884, the court rendered a final decree in this cause, as follows:

" The court doth further find that the second of the five notes secured to A. H. Detwiler & Co. by the second clause of said deed of trust, Exhibit " A.," and which were the second lien thereunder, was not paid by J. B. Detwiler & Co.; that the draft of J. B. Detwiler & Co. of July 19, 1866, for $2,480.00, at ninety days, upon Detwiler & English, mentioned in the depositions of A. H. Detwiler and John Wagner and filed as Exhibit " E" with H. Forbes' answer, was not a payment but merely an extension of said note, and that the balance in the hands of said trustees, after paying the plaintiff's first $5,000.00, being insufficient to pay the said second note together with the last three of said notes in full (although more than sufficient to pay the last three), the said A. H. Detwiler & Co. are entitled to the whole of said balance; and neither the plaintiffs nor defendants desiring any further account from the trustees as to the disposition of the money obtained by them from the sales of the real estate and boilers and engine mentioned in Exhibit " A." of the bill, it is therefore adjudged, ordered and decreed that the plaintiffs take nothing by their bill, and that they pay to the defendants their costs by them about their defence hereto expended."

From this decree the plaintiffs, Hopkins & Janney, obtained an appeal to this Court.

*W. V. Hoge* and *J. E. McKennan* for appellants.

*T. J. Hugus* for appellees.

GREEN, JUDGE:

The only question presented by the record in this cause, which it is necessary for us to consider is: Was the negotiable note dated July 10, 1864, executed by J. B. Detwiler & Co. to the plaintiffs, Hopkins & Janney, payable and negotiable at the Merchants' and Mechanics' bank of Wheeling two years after its date, and which fell due on July 19, 1866, paid by J. B. Detwiler & Co. on the day on which it fell due? If paid at all, it was paid by J. B. Detwiler & Co. on July 19, 1866. I have stated all the evidence of the witnesses bearing

on this question. I have stated this evidence instead of stating simply the facts proven, because though there were several living witnesses, who were personally cognizant of all the facts bearing on this question, only one of them was examined, and he did not state all of the facts, which must have been within his personal knowledge. But this failure to state all the facts clearly was not the result of any apparent unwillingness on the part of the witness, but resulted from the failure of the counsel on both sides to propound to him questions, which would have called forth a statement of facts, which would materially have aided the court in determining the question under consideration. The witness to whom I refer is A. H. Detwiler. All of these facts were obviously personally known also to J. B. Detwiler. He was living, for he filed his answer in this cause on September 3, 1884, and the depositions in this cause bearing on the question under consideration were taken on August 30, 1884, four days prior to the filing of his answer. Yet his deposition was taken by neither the plaintiffs nor the defendants. It is probable too that important facts bearing on the question, which we are considering, were personally known to the cashier of the National Bank of Wheeling and to the directors of this bank in July, 1866, when that bank discounted the draft of J. B. Detwiler & Co. on Detwiler & English, out of the proceeds of which the plaintiffs claim, that this negotiable note of $2,480.00 was at once paid by J. B. Detwiler & Co. Yet the deposition neither of this cashier nor of any of these directors was taken, though it is probable that some of these parties were living. Instead of taking the deposition of any of the persons, who were probably cognizant of the facts, the plaintiffs contented themselves with taking the deposition of John Wagner, only the cashier of this bank in 1884, who stated that he had no personal knowledge of the facts, as he was not cashier of the bank in 1866, when these facts transpired, and all he knew of them was from the original entries on the books of the bank and from its correspondence.

Because of the defective manner, in which this cause is presented to us, we are compelled to supply the deficiency by inferences from the few and imperfectly stated facts which are proven. And first: Was the draft dated July 19, 1866,

drawn on Detwiler & English of Philadelphia and payable to the order ot J. B. Detwiler & Co. for $2,480.00 ever accepted by Detwiler & English; and, if so, when? It is stated by John Wagner, the cashier of the National Bank of West Virginia, that the books of that bank showed " that on the 19th of July the bank discounted for J. B. Detwiler & Co. a draft drawn by them July 19, 1866, on Detwiler & English at ninety days for $2,480.00." He does not say, that the books ot the bank showed, that this draft had then on it the acceptance of Detwiler & English; and I presume, if it had been then accepted formally on the face or back of the draft, the books of the bank would have shown the fact. Hence I infer, that it is most probable that this draft had not been accepted by Detwiler & English, when it was discounted by the National Bank ot West Virginia.

After it had been discounted by this bank, was it presented to Detwiler & English for their formal acceptance in writing, and did they so accept it? We might infer that this was the case, because it is usual to present such a draft for acceptance, and because we have in the evidence of A. H. Detwiler what amounts to a statement, that J. B. Detwiler & Co. asked of him as a member of the firm of Detwiler & English the privilege of drawing this draft on Detwiler & English, and further because James W. English expressly states, that Detwiler & English accepted this draft. But still it is doubtful, whether this draft was ever formally presented to Detwiler & English for their acceptance. It may have been, and most probably was, only presented to them for payment at the expiration of the ninety days, the time for which it was drawn. This inference we draw from the fact, that this draft is filed with the answer of Forbes, and, as the record is presented to us, has on it no acceptance signed by Detwiler & English. This may be the result of the clerk's failure to copy such acceptance, when the record was made out by him; and if so, we could ascertain, whether or no it was such an omission, by a writ of *certiorari;* but we deem it unnecessary to issue such writ, because we have concluded, that it would make no difference in our conclusions, whether this draft was or was not formally accepted by Detwiler & English. We will therefore regard it as a fact, that the draft never was presented to Detwiler &

English for their acceptance and never was formally accepted by them.

Was it paid by them, and if so, when? That it was paid by them at maturity is expressly proven by A. H. Detwiler, who was one of the firm of Detwiler & English. It is true James W. English says, he thinks it was protested, but says he is not positive. That it was not protested is evidenced by the fact, that it was filed with the answer of Forbes, and there was no protest accompanying it, as there would have been had it been protested.

Before this draft was drawn by J. B. Detwiler & Co., did they have an understanding with A. H. Detwiler, of the firm of Detwiler & English, that Detwiler & English would accept this draft, and that it would be met, and to meet this second negotiable note of J. B. Detwiler & Co. payable to A. H. Detwiler for $2,480.00, due July 19, 1866, and secured in the second clause of the deed of trust? That there was such an understanding, seems to me clear for several reasons. First. James W. English, the confidential book-keeper of A. H. Detwiler & Co. at that time, says in his deposition, that he knows the draft was drawn for the purpose of meeting this note of $2,480.00 due by J. B. Detwiler & Co. to A. H. Detwiler & Co. His knowledge of this, considering his confidential position, would naturally result from such an understanding between A. H. Detwiler and J. B. Detwiler & Co. Then A. H. Detwiler expressly states in his deposition that "J. B. Detwiler & Co. asked of him the privilege of drawing on Detwiler & English for this purpose." Of course, if this statement is to be believed, there was such an express understanding, as we have spoken of, between A. H. Detwiler of the firm of Detwiler & English, before the draft for $2,480.00 was drawn, and it was drawn in consequence of this express understanding. And lastly, what occurred when this draft was drawn by Detwiler & English, and discounted by the National Bank of West Virginia, it seems to me, demonstrates beyond doubt, that there was, before this draft was drawn, a distinct understanding between Detwiler & English and J. B. Detwiler, that they would accept and become responsible for this draft when drawn, if it was used to meet the negotiable note of J. B. Detwiler & Co. to A. H. Detwiler & Co. fo

the same amount as the proposed draft. This negotiable note had been sent to the bank for collection July 11, 1866, nine days before it fell due, and when it fell due, the bank discounted the draft of J. B. Detwiler & Co. on Detwiler & English for the exact amount of the note, and handed the note to J. B. Detwiler & Co., and the next day, I presume by the next mail, forwarded the proceeds of the discount of the draft to the Manufacturers' National Bank of Philadelphia, from whom it had received the note, and in whose hands it had been placed by A. H. Detwiler, of the firm of A. H. Detwiler & Co. for collection. At the same time, J. B. Detwiler & Co. sent by mail to Detwiler & English the note which had been handed to them by the bank. This is stated in the deposition of A. H. Detwiler. He says ; " They (J. B. Detwiler & Co.) took up their note with the draft on Detwiler & English. They returned us *then* the note to Detwiler & English." This statement shows, that the note as soon as it was handed to J. B. Detwiler & Co., was by them sent to Detwiler & English on whom they had drawn this draft. When Detwiler & English paid this draft at maturity, they were paid the amount of the draft or note by A. H. Detwiler & Co., and they passed the note to A. H. Detwiler  Co., the original payees, and it was produced in this cause by their counsel, in whose hands they placed it for collection. This is proven by A. H. Detwiler, and it was to some extent corroborated by the testimony of James W. English and by Isaac Detwiler, though their evidence throws but little light on the subject. There is no evidence on the part of the plaintiffs, that tends in any degree to rebut these statements of A. H. Detwiler in his deposition ; and we cannot but regard them as stating the real facts, so far as they go. If it was not true, that this note was forwarded at once to Detwiler & English, as soon as it was handed to J. B. Detwiler & Co. by the bank, it should have been proven by the plaintiffs, and whether it was or not, could have been proven, I presume, by J. B. Detwiler. They did not take his deposition, I suppose, because his answer in this cause plainly indicated, that if his deposition had been taken, he would have corroborated the statements made by A. H. Detwiler in his deposition.

There is nothing then in the record to support the position

of the counsel for the appellants, that the National Bank of West Virginia discounted the draft drawn by J. B. Detwiler & Co. on Detwiler & English on the exclusive credit of J. B. Detwiler &. Co., and that out of the proceeds of this discount they paid their negotiable note of $2,480.00 due to A. H. Detwiler & Co. and took up the note; and that after the destruction by fire of their mill, some four days afterwards, they agreed with A. H. Detwiler one of the firm of A. H. Detwiler & Co., that if Detwiler & English would pay this draft, this negotiable note would be transferred to them as unpaid, and that thus the orginal security by deed of trust on the real property of Detwiler & Co. and on their insurance of said property for the security of their notes would be kept alive, though in point of fact this note had been paid in full. If this had been so, their position, that the security for this note could not be kept alive by an agreement made after the note had been fully paid according to the understanding of both the makers and the payees, would be a sound position. But the evidence seems to me to show clearly, that the real arrangement between A. H. Detwiler & Co. and J. B. Detwiler & Co. was, that Detwiler & English, of which partnership he was the principal party, would accept this draft by J. B. Detwiler & Co. when drawn, provided that out of its proceeds they would take up this note secured by this deed of trust and send it to Detwiler & English as an unpaid note secured by the deed of trust; and that this agreement was carried out by J. B. Detwiler & Co. drawing this draft on Detwiler & English and getting it discounted, and out of the proceeds taking up the negotiable note of J. B. Detwiler & Co. to A. H. Detwiler & Co. and at once delivering it to Detwiler and English as a note secured by this deed of trust.

So understanding the facts the only question is: Was this transaction to be regarded in a court of equity as a payment of the negotiable note or only as an extension for ninety days, when this draft became due, of the time when this note became due? The circuit court regarded this transaction as a simple granting to J. B. Detwiler & Co. of a further credit of ninety days on the debt evidenced by this negotiable note secured by this deed of trust. The question before us is: Did

the circuit court err in this conclusion? It is evident it did not err, unless there is some inflexible rule of law, that, if a note is secured by a deed of trust, it is the note itself that is secured by the deed of trust and not the debt represented by such note, and if the form of the evidence of this debt is changed, that the deed of trust can not be regarded as a security for the debt represented by the new form of its evidence. But nothing is clearer than that no such rule of law exists, but that the very reverse of this rule is universally held to be law in a court of equity. Take for instance the case of *The Merchants National Bank* v. *Good, administrator*, 21 W. Va. 455. This Court decided in that case three propositions as stated in points three, four and six of the syllabus as follows:

"3. The giving of a new note for an old one which has became due—the amount and makers of the two notes being the same, will not be treated as a payment or extinguishment of the old note or the pre-existing debt, unless the parties so *expressly agree*; but it will be regarded as a mere extension of credit.

"4. In such case the surrender of the old note will not of itself raise a presumption of such agreement to extinguish the old debt by the giving of the new one, it being considered as a conditional surrender and that its obligation is restored and revived, if the new note is not paid.

"6. Nor will the presumption of payment apply where the creditor, when he takes the new note abandons some security which he holds."

In this case, page 465, Judge Snyder in delivering the opinion of the Court said: " It is well settled in both Virginia and this State, that a note will not be regarded as an absolute extinguishment or payment of a precedent note or pre-existing debt, unless it be so *expressly agreed*, whether the note received was that of one previously bound, or of a stranger; See *Poole* v. *Rice*, 9 W. Va. 73; *Lazier* v. *Nevin*, 3 W. Va. 627–8; *Miller* v. *Miller*, 8 W. Va. 550; *Dunlap* v. *Shanklin*, 10 W. Va. 662; *Bantz* v. *Basnett*, 12 W. Va. 772; *Sayre* v. *King*, 17 W. Va. 562; *Farmers' Bank* v. *Mutual Association So.*, 4 Leigh 88 ; *Moses* v. *Trice*, 21 Grat. 556; *Lewis* v. *Davisson*, 29 Grat. 216."

In Jones on Mortgages, vol. 2, § 924, the author states

the law on this subject : " No change in the form of indebt-
edness or in the mode or time of payment will discharge the
mortgage.  A mortgage secures the debt and not the note or
bond or other evidence of the debt.  No change in the form
of the evidence or in the mode or time of its payment, noth-
ing short of the *actual payment of the debt* or an express re-
lease, will operate to discharge the mortgage.  The mortgage
remains a lien, till the debt it was given to secure is satisfied,
and is not affected by any change of the note or by giving a
different instrument as evidence of the debt, or by a merger
at law merging the original evidence of indebtedness, or by a
recognizance of record in lieu of the mortgage note."   To
sustain this proposition the author refers to sixty cases, among
which I would call special attention to the case of *Flower* v.
*Edwards*, 66 Ill. 438.   Among the cases cited is one, which
so strongly resembles the case before us, that I will state it at
some length.   I refer to the case of *Babcock* v. *Morse*, 19
Barb. 140.   In that case the facts were as follows : On the
4th of March, 1848, Morse & Wiggins executed a mortgage
to Babcock & Burnap to secure the payment of all such
sums of money, as the mortgagees should become liable for
by accepting or signing for the mortgagers any notes or drafts.
Soon after Morse & Wiggins drew drafts on Babcock & Bur-
nap to the amount of $850.00, which they accepted.   These
drafts were renewed by other drafts drawn and accepted by
the same parties from time to time till March 21, 1851, there
then remaining due on them the sum of $850.00.   On that
day Morse drew a draft on Babcock, Dubuisson & Hall, which
with another draft by and on the same parties, was discounted
and the proceeds remitted to Babcock to meet the acceptances
of Babcock & Burnap.   This was done under an arrangment
made between Morse & Babcock and Babcock, Dubuisson &
Hall to the effect that Morse might draw on the firm of
Babcock, Dubuisson & Hall for the purpose of meeting the orig-
inal acceptances of Babcock & Burnap, and that Babcock would
indemnify Babcock, Dubuisson & Hall against loss. In an action
to foreclose the mortgage executed by Morse & Wiggins, it
was insisted, that the receipt by Babcock of the proceeds of
the draft drawn upon Babcock, Dubuisson & Hall to meet the
acceptances of Babcock & Burnap was a payment of the debt,

for which the mortgage was a security, and consequently the action would not lie. But the court decided, that Babcock was not discharged from liability, nor the debt secured by the mortgage substantially changed, except in respect to further credits; that as between Babcock and the firm of Babcock, Dubuisson & Hall he was the principal debtor and they were his sureties; that as to him the transaction was but a renewal of drafts, and the mortgage continued to be security for his liability; and that it might be foreclosed by him upon the non-payment of the drafts drawn on this firm. The court says on pages 143 and 144:

" If Morse had drawn upon Babcock & Burnap, and Babcock had accepted his drafts and secured the proceeds to the full amount due upon the mortgage, it would not be contended, that the demand secured by the mortgage was thereby paid; the transaction would have been simply a renewal of the evidence of indebtedness and an extension of credit for the period the drafts were to run. It has often been held, that a renewal of notes secured by mortgage or judgment is not a satisfaction or extinguishment of the original debt so as to affect the continuance of the security. (*Dunham* v. *Dey*, 15 Johns. 554; *Brickerhoff* v. *Lansing*, 4 Johns. Ch'y. 65; *The Bank of Utica* v. *Finch*, 8 Barb. Ch'y. 293.) So if Babcock had given his promissory notes and taken up the drafts upon Babcock & Basnap, the effect would be the same; it would be a mere renewal. And if he had procured others to unite with him in the note as his sureties, it is not perceived, that the result would be different. There is no difference in principle between the present case and the case supposed."

In my judgment there is no difference in principle between the case now before us, and the supposed case put by the New York court; and as held by the circuit court, the draft of J. B. Detwiler & Co. of July 19, 1866, for $2,480.00 upon Detwiler & English was not a payment of the negotiable note for that amount given by J. B. Detwiler & Co. to A. H. Detwiler & Co. secured by a deed of trust, but was merely an extention of credit on the debt represented by that note. There was no error in the decree of the circuit court giving costs against the plaintiffs, as by their false demand of the funds in the hands of the trustees they delayed the defendants, A. H.

Detwiler & Co., for many years in the receipt of funds, which were justly coming to them. The decree of the circuit court of Ohio county of October 11, 1884, must therefore be affirmed and the appellees must recover of the appellants their costs in this Court expended and $30.00 damages.

AFFIRMED.