## CHARLESTON.

### MOORE v. JOHNSON.

Submitted January 21, 1891.—Decided February 2, 1891.

USURY—NEW PROMISE—PAYMENT.

 Where A. lends B. money at usurious interest taking B's bond with C. and D. as sureties, and B. executes a deed of trust to C. & D. to save them from loss, and subsequently A. surrenders to C. & D. the bond taking instead their note, and C. & D. foreclose the deed of trust and purchase the land giving in payment the bond, and afterwards A. brings suit against C. & D. on the note, the note is not in payment of the bond, and C. & D. are entitled to credit under the Code, c. 96, s. 6 for the interest paid by them in excess of the legal rate. (By a Divided Court.)

*Henry Gilmer* for plaintiff in error.

*G. W. Warren* and *L. J. Williams* for defendants in error, cited:

23 W. Va. 473 ; 26 W. Va. 116; 29 Gratt. 591 ; 3 Min. Inst. 384; 20 Johns. 76; 1 Wend. 172; 23 Gratt. 551; 30 Am. Rep. 385 ; 28 Am. Rep. 490 ; 21 W. Va. 108; Acts 1882, c. 104.

HOLT, JUDGE :

This was an action of debt brought in the Circuit Court of Greenbrier county, and tried by the court in lieu of a jury, on the 2d day of May, 1890, on a plea of usury, under our statute, put in by defendant Johnson alone, and without other plea. The finding and judgment were for defendants, to which plaintiff below excepted, and his bill of exceptions brings all the evidence into this record brought here on writ of error allowed to him.

The facts are as follows: On 6th October, 1881, plaintiff, Moore, loaned to one C. C. Maddy one thousand five hundred dollars for one year, at ten per cent. interest, four per cent. in excess of what our law allows. The interest for the year, one hundred and fifty dollars, was put into the note (single bill, it appears to have been.) * This note,

hereafter called "old note," was dated 6th October, 1881, was for one thousand six hundred and fifty dollars, due twelve months after date, and executed to Moore, the lender, by Maddy, the borrower, together with defendants here, Johnson and Brown, as his sureties. It shows by indorsement thereon the following payments, and no others are claimed; 6th October, 1883, eighty two dollars and fifty cents by Johnson, eighty two dollars and fifty cents by Brown; 6th October, 1884, one hundred and sixty five dollars by Johnson; 6th October, 1885, one hundred and sixty five dollars by Johnson; and 6th October, 1886, eighty two dollars and fifty cents by Johnson. On the same day, 6th October, 1881, the borrower, Maddy, together with his wife, conveyed to M. T. Fenner, of Gallia county, Ohio, certain real estate in the deed mentioned and described, lying in that county, in trust to secure Brown and Johnson as indorsers and sureties from any loss or damage they might thereby sustain. Maddy, the borrower, was and is insolvent. He never directly paid anything, but Johnson and Brown, his sureties, paid all, as already stated. In 1886 the mother of Maddy who had dower in the Ohio land died, leaving it unincumbered, except a small judgment-lien having priority over the deed of trust. Johnson and Brown wished to foreclose and buy at the sale, but Johnson was advised that he would have to lift the old Maddy note (bond) in order to buy in the Ohio land under these proceedings. Johnson and Brown acted on this opinion; went to Moore, the creditor, told him the dower was off the Ohio land; that they wanted to bring it to sale under the deed of trust, and buy it in for the old note; but, in order to do this, requested Moore to give them up the old note and take their note. To this Moore agreed; gave them up the old note; took a new note for one thousand seven hundred thirty two dollars and a half, dated 6th October, 1886, due on demand, which is the note sued on. Johnson then took the Maddy note to Ohio, bought the Ohio land worth, say, two thousand five hundred dollars, valued at that for taxation, and paid for it with the Maddy note, except a prior lien and costs, together amounting to about three hundred and fifty dollars. Johnson says he considered it a renewal of the

old note. Defendant Brown, who does not join in the plea, says the consideration of the new note was the surrendering up of the old note to them for the purpose of enabling them to buy in the Ohio land under their deed of trust. Moore says he expressly sold them the old note at their instance, to enable them to buy the land.

Our legal rate of interest is, and for a long period has been six *per cent. per annum*, and all contracts made directly or indirectly for the loan or forbearance of money or other things, are at that rate when none is mentioned, and are void as to any excess of interest agreed to be paid above that rate, and void no further. The defence of usury is personal but that includes the sureties sued on the usurious contract. Thus our present statute conforms to the equitable doctrine that he who seeks equity must do equity. That there may be no trouble as to the mode of defence and procedure, the statute further provides that the debtor may, as he has done in this case, say in a general way in his plea that the contract on which the action is brought was for the payment of interest at a greater rate than is allowed by law, to which the plaintiff shall reply generally, but may give in evidence any matter which could be given in evidence under a special replication; and under his plea the defendant may give in evidence any fact showing, or tending to show, that the contract was for a usurious consideration; and upon such plea the court shall direct a special issue to try and ascertain (1) whether or not the contract is usurious; (2) if usurious, to what extent; and (3) whether or not interest has been paid on the contract above six *per cent.*, and, if so, to what extent. And if a verdict be found upon the plea of usury for the defendant, a judgment shall be rendered for the plaintiff for the principal sum due, with interest at the rate of six *per cent. per annum*, and, if any interest has been paid above that rate, the excess over and above that rate shall be entered as a credit on the sum due; and, if nothing be found due after applying all credits and all excesses of interest above six *per cent.*, judgment shall be entered for the defendant. The old remedy in equity for discovery and relief is also retained. This statute by its terms, as I think, disposes of all the questions raised.

1. The sureties may avail themselves of this defence, not only because they are parties to the contract, but because they are contemplated and designated by the statute under the term "defendant."

2. If the borrowers have paid off the usurious debt, they can not by an independent suit recover it back, nor when they are sued can they, after getting credit for all excess of interest paid, have judgment against plaintiff for any overplus.

There can be no bar to what is to be credited as a payment. If the new note sued on was but a renewal, a new note evidencing the old loan, with eighty two dollars and a half back interest on the old note added, the excess of interest paid on the old note, as well as that paid on the new, would have to be credited. But that in my view is not the case here. Defendants, Johnson and Brown, asked the creditor, Moore, in effect to take their new note, without Maddy, in absolute and unconditional payment and discharge of the old or Maddy note, and the equitable transfer thereof to them for their own purpose and for their own benefit, and to Moore's disadvantage, so far as it was a release of Maddy as his debtor, and so far as it was a relinquishment to them of his right to look to the deed of trust on the Ohio land for his pay. To this Moore assented, and a new note was given. That was as absolute and unconditional a payment of the old note by Johnson and Brown as if it had been in legal tender, operating also as an equitable transfer thereof to them, and was as full and as absolute payment by Moore to them of the excessive interest paid on the old note as if Moore had counted it out to them dollar by dollar. There could have been no device or evasion unless it was on their part, and, I am sure, they were acting in good faith, although for their own advantage, and that they have on this trial related the facts just as they occurred. What has been said shows that the Circuit Court was right in crediting the amount found due, with the excess over and above six *per cent.* paid on or contained in the new note, treated as a new contract. But this Court being equally divided in opinion, the judgment of the Circuit Court must be affirmed.

LUCAS, P., concurred with HOLT, J.

Brannon, Judge:

I can not concur in the foregoing opinion of Judge Holt. Contracts for interest in excess of the lawful rate, however binding on the honor and integrity of the debtor, have never received any countenance or favor from the laws of the two Virginias. It is settled that money paid on a debt, though the parties agree that it shall go on the usurious interest, shall, if the debtor choose, be treated, not as an offset, but as a payment which the law will apply on the principal and lawful interest. *Reger* v. *O'Neal*, 33 W. Va. 159 (10 S. E. Rep. 375) and citations. Payments made by a principal inure to the benefit of the surety, and payments by one surety inure to the benefit of a co-surety against the creditor. While the defence of usury is personal to the debtor, yet one in privity with him as a surety can use the defence, as conceded in the foregoing opinion. Brandt, Sur. § 202; Tyler, Usury, 404, 409; *Pugh* v. *Cameron*, 11 W. Va. 523; 7 Wait, Act. & Def. 625.

Now, I ask, why the usury incorporated in the bond and payments on it shall not avail the defendants in this action? It is urged that the giving of the new note is, under the circumstances, a novation of the debt—a payment as perfect as if it had been paid in dollars. The authorities will not sustain the position. In *Hess* v. *Dille*, 23 W. Va. 90, Snyder, J., says: "The doctrine is well settled, in both Virginia and this state, that the giving of a new note for a previous one, which has become due, will not be regarded as an absolute payment or extinguishment of the precedent note or pre-existing debt, unless it be expressly so agreed, whether the new note was that of one previously bound or of a stranger. *Dunlap* v. *Shanklin*, 10 W. Va. 662; *Feamster* v. *Withrow*, 12 W. Va. 611; *Bantz* v. *Basnett*, Id. 772; *Bank* v. *Good*, 21 W. Va. 455, 465, and cases there cited." This same doctrine is stated as established law in the opinion by Judge Green in *Hopkins* v. *Detwiler*, 25 W. Va. 748 as follows: ."Where the new note is that of a third person not previously bound, the taking of the new note and the surrender of the old will be treated *prima facie* as a discharge of the old note." *Hess* v. *Dille*, 28 W. Va. 90.

But here no new party signed the new note. Only the two sureties in the old bond signed the new note. Even where one not previously bound executes the new note, it is only *prima facie* a discharge of the old one, but no discharge at all where parties bound in the old go into the new. The surrender of the old note will not raise a presumption of an agreement, and an agreement is necessary to extinguish the old note by giving a new one, but it will be considered as a conditional surrender, and that the obligation of the old note is revived, if the new note is not paid. *Hopkins* v. *Detwiler, supra;* 2 Daniel, Neg. Inst. § 1266a. Surely no one in the face of these authorities will say that the giving of the new note and the surrender of the bond in its place, with no agreement that the bond should thereby·be extinguished—for that is not claimed— would discharge the bond. But such new note and surrender of the bond together with the following facts operate, it is said, as payment. The two sureties in the bond took from their principal a deed of trust on Ohio land to indemnify them, and afterwards, when proceedings were going on in Ohio to sell this land for a prior lien and this deed of trust, these sureties informed Moore that they wished to buy in the land, and wanted to lift the bond to buy in the land, so as to get credit for the bond on the purchase-money, and Moore agreed to give up the bond and take the new note. It is claimed that this Ohio mortgage was a security for Moore, the creditor, though taken, not to secure his debt, but to indemnify the sureties. Though it seems to be generally settled that an indemnity taken by the surety inures to the benefit of the creditor to secure his debt (Jones, Pledges, § 523; Jones, Mortg. § 385) yet in Virginia, in *Jones* v. *Lackland,* 2 Gratt. 86, Judge STANDARD said:

"I apprehend, where a surety takes such security from his principal, he has full power over it, and may release or discharge it at least at any time before the party claiming under the primary obligation shall have asserted his claim in equity to rely on this indemnity, or unless such release or discharge results from collusion·between the principal and the indemnified surety. This case is not like

that of an additional security taken by the creditor, to the benefit of which the surety becomes immediately entitled, and which the creditor can not surrender without the consent of the surety."

In the cases of *Hopewell* v. *Bank*, 10 Leigh, 206, and *Bank* v. *Boisseau*, 12 Leigh, 387, we may say that the right of the creditor to subrogation to the surety's indemnity is recognized, but under the surety. Here is a security to which Moore was not a party, but made solely to the surety's indemnity, in which the surety has primarily the right, and to which the creditor could claim an interest only by subrogation through the surety, and the surety had the primary right to resort to it for his indemnity, and could release it, and was the proper party to release it, with the creditor's consent; and simply and only because the surety tells the creditor that he wants to buy in the land under a sale to satisfy a prior lien, and wanted possession of the bond to get credit for it as a second lien on the purchase-money, and the creditor does not object, and takes a new note for the debt, and surrenders the old bond for the purpose aforesaid, without a shadow of express agreement that it is to be considered a discharge, this is to be treated as a novation, debarring the surety from availing himself of the usury. It seems to me that the proposition is manifestly untenable. The very fact that the deed of trust on Ohio land was not expressly to secure the old note, but to indemnify the sureties in it, makes the argument of an intention to discharge the old note weaker than it would be, had the deed of trust been taken to secure the old note to Moore. But had it been so taken, its surrender would be a circumstance, not in favor of, but against, the idea of an intent to discharge the bond; for it is laid down in 2 Daniel, Neg. Inst. § 1267, that "the presumption of payment does not apply where the creditor abandons some security which he held when he takes the paper." This principle is stated as law in *Bank* v. *Good* and *Hopkins* v. *Detwiler*, cited above.

Another argument against the idea that giving up his security on the Ohio land is the factor in the case potent to show payment of the bond is this, that the bond, with the

personal obligation of the parties under it, is one thing, a lien to secure it another, and the lien can be released or surrendered, yet the note remains enforceable. And again the transaction is said to be a surrender by Moore of his right to look to the Ohio land. This is questionable. He consents to its purchase by the surety, delivering the old bond that they might get credit on the purchase-money for it, it being a debt or liability provided for in the decree. Did Moore consent that, when the surety should purchase, the land should stand in their hands absolved from claim for his debt? They purchased with full notice of his right. If we treat it as no surrender or absolution of the Ohio land from his debt, then that factor fails of any weight in the matter, leaving only the giving of the new note in place of the old bond; and confessedly that would not constitute a payment of the bond; and, on the other hand, if it be a surrender by Moore of the Ohio land, it is a circumstance against the intent to treat the bond as paid, as shown above. I have above laid no stress on the fact that the instrument first given to Moore by Maddy, Johnson, and Brown was a sealed instrument, commonly called a bond or single bill, whereas the one in its place was a promissory note. The old common-law was that a specialty could not be discharged by a parol undertaking (5 Rob. Pr. 740; *Wilson* v. *Spencer,* 11 Leigh, 273; note *a,* 1 Tuck. Bl. Comm. 389; 1 Chit. Pl. 524) and, as pertinent to this matter of novation, three cases in Virginia hold that, to make one instrument an extinguishment of another, the new must be of higher dignity than the old, and an express agreement that the note shall extinguish the specialty would be *nudum pactum,* and if the note is not paid the bond will still live, notwithstanding the agreement that it should be discharged (*McGuire* v. *Gadsby,* 3 Call, 234; *Herrington* v. *Harkins,* 1 Rob., Va., 591; *Parker* v. *Cousins,* 2 Gratt. 373; *Bank* v. *Good,* 21 W. Va. 465.)

Though the law is liberalizing from its former rigid doctrine as to sealed instruments, it can not be said that there is a distinct overruling of this doctrine in Virginia or here. In 1880 the Virginia Court of Appeals, in *Coles* v. *Withers,* 33 Gratt. 186, held that a mere change of securities of equal

dignity is not a novation of a debt, unless plainly so intended by the parties. Here the note is of inferior dignity to the bond, and the case was a common-law action, not in equity. Thus I hold that there was no discharge or payment of the bond ; and, this being so, all usury in the bond or the note, they being the same debt, should go to the benefit of the defendants. No strained arguments should be made to deprive the defendant relying on that defence of its benefit, but rather we should look at the substance, and allow no formal change of papers, not changing substance, to defeat the policy of the law to give that defence without regard to any device or form intended or not intended to impede it. The law gives the creditor principal and lawful interest, but intends no more against an unwilling debtor. That set policy of the law should not be frustrated by unsubstantial form. I can not concur in that feature of the opinion prepared by Judge HOLT, that the effect of section 6, c. 96, Code, is to prevent a defendant using the plea thereby provided for from recovering back interest. He may not be able to recover it in that action, but I do not think the act was intended to deny the right of action given by law to recover usurious interest paid.

The plea of usury at common-law was required to be precise and certain, showing the precise agreement, the time and the amount of unlawful interest, and the defence was attended with difficulty, 4 Minor, Inst. 1630; 5 Rob. Pr. 492; Tyler, Usury, 458; 7 Wait, Act. & Def. 628. This act was passed to simplify the procedure. 5 Rob. Pr. 496. It only relates to procedure where the defence is made. It only intends to allow the defence to be made by an informal, general plea; because it says that where such plea is filed, if after applying payments of unlawful interest as credits nothing is due the plaintiff, judgment shall be entered for defendant, and thus directs judgment for the purposes of that particular suit brought by the creditor for the debt, it is not to be inferred that it intended to abolish the right arising from common-law of the plaintiff to recover in another action. The statute, as a remedial statute, has not gone so far as to make the payments over the debt recoverable under the plea. That stands outside the stat-

ute. Seeing no error in the action of the Circuit Court, I would affirm its judgment.

ENGLISH, J., concurred with BRANNON, J.

AFFIRMED.